The Lake Shore and Michigan Southern Railroad Company

*v.*

Nancy J. Brown, Adm'x.

*Filed at Ottawa November 11, 1887.*

1. Negligence—*carriers of passengers—relative care required of passenger and carrier—passenger occupying places of extra hazard.* It does not necessarily follow that a passenger guilty of some negligence, slight in its character, can not recover for a personal injury resulting from the gross negligence of the carrier.

2. In an action by a personal representative against a railway company, to recover damages for the death of the intestate through negligence, the test of the plaintiff's right to recover is the exercise by the deceased of ordinary care, or such care as a prudent and ordinarily cautious man would observe for his personal safety, and the failure of the railway company to exercise proper care, and injury therefrom causing the death.

3. In such action to recover for the death of a passenger, caused while riding on a foot-board of an engine, in determining whether the deceased was negligent in occupying a place of danger, the jury may consider not only the acts of the deceased, but also the acts of the servants of the company, not alone in respect to the management of the engine, but as connected with the act of the deceased. Placing the passenger in a place of unnecessary hazard, or giving him assurance of safety, and thereby throwing him off his guard, may render his apparent want of care the negligence of the carrier, and relieve his act of the quality of negligence.

4. If a railway company agrees to furnish a shipper of live stock, passage from its road to stock yards, not far distant, he will be under no obligation, at his own expense, to pursue a different route and mode of travel from that provided by the company; and if the company furnishes a dangerous mode, and its servants in the apparent line of their authority direct the shipper to take passage on an engine attached to the car of stock, the company can not escape liability for an injury to him through the negligence of its servants, by showing that he might have procured passage by some other line of travel.

5. If a passenger takes a place of extra peril by the invitation of the carrier's servants, the law requires of the latter the exercise of a corresponding degree of care for his safety. The carrier's care ordinarily is to be measured by the known peril of the party it undertakes to carry. If the passenger is placed in a position of great danger he should be informed of that fact, so as to enable him to exercise greater precaution or avoid the danger altogether.

6.   While a railway company may not ordinarily carry passengers on its freight trains or locomotives, or hold them out to the public for that purpose, yet if, through its authorized agents, the company accepts a passenger for reward upon such trains or engines, it will be bound to exercise care and diligence for the safety of such passengers.

7.   And so, although a stock or freight train may not be operated for the carrying of passengers, yet if those in charge thereof assume to carry one thereon, and he is on the engine by their invitation and direction, it can not be said, as a matter of law, that the carrier is not bound to operate the same in any other than the usual manner for the conveyance of stock; on the contrary, the servants of the carrier must operate the train in such manner as due care and caution may suggest for the safety of the passenger. Even if a party is wrongfully on an engine, and is permitted to remain there, this will not excuse the want of ordinary care to prevent injury to him.

8.   SAME—*liability for acts of servants.*   Where servants of a railway corporation keep within the course of their employment, the master will be responsible for their negligence or wrongful acts, although such acts are against instructions, or are even willfully performed.

9.   The private rules and regulations of a railway company, prescribing the duty and powers of its servants and employes, can not affect persons having no notice of them.   As the company is liable for the acts of its servants in the course of their employment, both in the rightful use and in the abuse of the powers conferred on them, or even their willful acts, evidence that its servants exceeded their rightful powers, is not admissible to defeat a recovery against the company by one injured by their acts, unless he had notice of the extent of the servants' powers.

10.   Persons dealing with railway corporations can only judge of the powers given to its agents and servants from appearances, and the position and acts of such employes.   So when those in charge of a train in which a party has a carload of cattle, direct him to get upon the train or the engine to be carried to the destination of his stock, he will not be bound to inquire as to the extent of their authority to act, before obeying their directions, in order to relieve himself from the imputation of negligence.

11.   SAME—*negligence as a question of law or fact.*   Whether a passenger on a freight train in charge of stock shipped by him is guilty of gross negligence in getting upon the foot-board of a transfer engine, and riding there, by the direction or invitation of those in charge of his stock and of such engine, is a question of fact for the jury, to be found from all the facts and circumstances shown by the evidence.

12.   It can not be said, as a matter of law, that a party is guilty of gross negligence because he may ride a short distance upon a locomotive engine, or take some other mode of carriage or travel which is attended with some danger.   The question of negligence in such cases depends upon the attendant and surrounding facts and circumstances.

13. Passengers—*who to be so considered.* If a railway company gave a shipper of live stock a pass to stock yards at a distance from its line of road, to which place the stock were shipped, or engaged to transport the shipper to such stock yards, and its servants, clothed with apparent authority to act for the company, directed him to take passage on the engine after leaving its road, and undertook to carry him on the same, these are facts proper to be considered by the jury in determining whether such shipper was a passenger while on the engine.

14. In an action against a railroad company, to recover damages for the killing of the plaintiff's intestate by negligence while taking him and his car of stock from the defendant's yard to a stock yards, the place of destination, evidence of a custom of the defendant in allowing shippers of live stock to ride upon its engines and cars containing stock, to the stock yards, is admissible, as tending to show the authority of the servants of the railway company to thus carry the deceased, and that the latter was at the time a passenger for reward.

15. Practice—*refusing cumulative testimony.* Where a fact is proved by two witnesses, and is not controverted, there is no substantial error in refusing to allow the same proof to be made by another witness.

16. Same—*directing what the verdict shall be.* An instruction for the jury to find for the defendant, will not be given when there is evidence tending to prove the material facts necessary to maintain the issues for the plaintiff.

17. Instructions—*assuming what the contract was.* Where there is evidence tending to show that a railway company was, by its contract, bound to carry the plaintiff's intestate between certain points, an instruction which tells the jury, as a matter of law, that the company was under no obligation to furnish the deceased with transportation between such points, is faulty, and is properly modified by leaving the jury to find, from the evidence, whether such transportation was to be furnished.

18. Same—*ignoring evidence on the particular point.* An instruction as to the duty of a person to take the safest place possible to avoid an injury by accident or through negligence, is bad if it wholly ignores evidence to the effect that he took the position he did by the direction of the servants of the defendant, and their negligence in that respect.

19. Same—*whether omitting an element on the question of negligence— an instruction construed.* In an action against a railway company, to recover for the death of the plaintiff's intestate through negligence, the court instructed for the plaintiff, that if the jury believed, from the evidence, that the deceased was rightfully on the defendant's engine, as alleged in the declaration, and that while he was on said engine he was using ordinary care, on his part, for his personal safety, and was, by and through the carelessness and negligence of the defendant's servants in running and handling said engine, thrown from said engine and injured, from which

said injuries he died, then to find for the plaintiff: *Held,* that the instruction did not exclude a consideration of the negligence of deceased in placing himself on the engine, and did not assume that defendant's servants were guilty of negligence in running and handling the engine, and was not liable to the objection that it failed to confine the right of recovery to the specific negligence named in the declaration.

20. Appeal—*affirmance by the Appellate Court—as settling the facts.* The affirmance of a judgment for the plaintiff by the Appellate Court, in an action on the case for negligence, must be taken as settling all questions of fact necessary to a recovery, in favor of the plaintiff below, and as holding the evidence sufficient to sustain the finding of the jury under the issues made by the pleadings.

Appeal from the Appellate Court for the First District;— heard in that court on appeal from the Superior Court of Cook county; the Hon. Elliott Anthony, Judge, presiding.

This was an action on the case, brought in the Superior Court of Cook county, by Nancy J. Brown, administratrix of the estate of Nelson Brown, deceased, against appellant, to recover damages for wrongfully causing the death of the intestate, who was the plaintiff's husband.

A demurrer was sustained to all except the eighth and ninth counts of the declaration. The eighth count alleged, in substance, that the defendant, on August 12, 1881, possessed and operated a railroad in Cook county, and also a certain locomotive engine and train of cars, which were under the management of defendant's servants, who were driving the same upon and along the said railroad near to and towards the Union Stock Yards; that a stock-car in said train, attached to said engine, was loaded with stock belonging to and in the care and charge of the said Nelson Brown, who was then rightfully, and by the direction of defendant's said servants, riding upon said locomotive engine from the main line of defendant's said railroad to the said stock yards, which said car so loaded with stock, with the said Nelson Brown in charge thereof, the said defendant undertook, for certain reward, to transport and carry safely to said stock yards, and thereupon it then and there

became and was the duty of the defendant, with all due care and diligence, to transport and carry said carload of stock, with the said Nelson Brown so in charge, safely and without injury, to the said stock yards, and place the said car of stock at the proper place at said stock yards for unloading the same; yet the defendant did not regard its duty, or use due care in that behalf, but on the contrary thereof, and wholly disregarding the same, and knowing that the said Nelson Brown was riding on said engine, and without any warning to him, the defendant, by its servants, carelessly, negligently and improperly drove said engine and cars upon and along said railroad track at a high rate of speed, and then suddenly checked the said locomotive, and without warning to the said Nelson Brown uncoupled said engine from said car, and then suddenly throwing on a full head of steam, drove the said locomotive suddenly along said track, and turned the said car, still running at a high rate of speed, to and upon a side-track, thereby making what is called a "running switch," and the plaintiff avers that by reason of the careless, negligent and improper conduct of the defendant, by its said servants, in uncoupling the said engine from said cars and then suddenly increasing the speed of the said engine, without warning to the said Nelson Brown that they were about to make a running switch, they well knowing the danger thereof, the said Nelson Brown was, by and through the careless, negligent and improper conduct of the defendant, by its servants, then and there thrown from said engine to and upon the ground, and before he could arise was struck and run over by the said car of stock, and was greatly bruised, mangled and injured, and had his leg cut off, his ribs broken, and his lungs injured, from which injuries he, the said Nelson Brown, afterwards, to-wit, on the day and year aforesaid, died; and the plaintiff avers that the said Nelson Brown left him surviving Nancy J., his widow, and John, Margaret J., Elijah, Lorenzo D., Jessie M., Emma A., Omer A., and Cora L., his children and next of kin. By reason of said

death Nancy J. has been deprived of her means of support, and Lorenzo D., Jessie M., Emma A., Omer A., and Cora L., who were all minors, have been deprived of their means of support and education.

The ninth count avers that the defendant, on August 12, 1881, possessed and operated a certain other railroad in Cook county, and also a certain locomotive engine, and car attached thereto, under the control and management of defendant's servants, who were driving the same upon and along the said railroad leading to the Union Stock Yards; that said car was loaded with stock belonging to and in charge of said Nelson Brown, which said car of stock, with said Nelson Brown so in charge thereof, the said defendant then and there undertook to transport and carry to the said Union Stock Yards for reward, and there being no car in said train except the said car so loaded with stock, the defendant, by its servants in charge of said train, when about to start directed the said Nelson Brown to get upon the said locomotive engine to be carried to the said stock yards, which the said Nelson Brown did, not knowing the danger thereof, and thereupon it then and there became and was the duty of the said defendant, with all due care and diligence, to safely convey and carry the said Nelson Brown, with his said stock, to the said stock yards, and to place the said car where the same could be unloaded; yet the said defendant did not regard its duty, or use due care in that behalf, but on the contrary thereof, the said defendant, by its said servants, carelessly, negligently and improperly, and without any warning to the said Nelson Brown, and well knowing the great danger thereof to him, made a running switch with said car of stock, and in making said running switch the said defendant then and there, by its said servants, carelessly, negligently and improperly caused the said locomotive engine to be suddenly and violently started and moved, and thereby the said Nelson Brown was then and there thrown with great force and violence from and off the said locomotive

engine to and upon the ground, and then and there, before the said Nelson Brown could arise, was run upon and over by the said car of stock, and was thereby greatly bruised, injured and mangled, and had his leg crushed, his ribs broken, and was otherwise greatly injured and bruised, from which injuries and bruises he afterwards died. Averment of next of kin and damage, same as before.

The defendant filed the general issue, and a trial was had, resulting in a verdict in favor of the plaintiff for $5000. A motion for a new trial was overruled, and judgment rendered on the verdict. The defendant appealed to the Appellate Court for the First District. That court having affirmed the judgment, the defendant, by its further appeal, brings the case to this court.

Nelson Brown, the deceased, resided at Rensselaer, Indiana, and had for several years been engaged in shipping stock to the Union Stock Yards at Chicago. In route, the course was to go from Rensselaer to Monon, over the Chicago and Indianapolis railroad, thence over the Louisville, New Albany and Chicago railroad, to Otis, on the line of the defendant's road, and thence, over defendant's road, to the defendant's yard at Forty-third street, immediately south of the city limits. From this yard the car of stock would be taken a distance of about three-quarters of a mile, by a switch engine of the defendant, over the tracks of the Union Stock Yard and Transit Company, to its proper place for being unloaded at the Union Stock Yards. On August 11, 1881, the deceased made a shipment of a carload of hogs from Rensselaer to the Union Stock Yards, going in charge of the same, riding in a caboose car to the defendant's yard at Forty-third street. He had a pass to Monon, but whether he had one from that point to the Union Stock Yards there is no direct evidence. Upon this point evidence was admitted showing a custom of the defendant to pass shippers of live stock over its road to the stock yards without requiring pay therefor in addition to the charge for carrying

the stock. The deceased was carried with his car of hogs. to Forty-third street, at which place the train arrived about six o'clock in the morning of the 12th of August. Then the caboose was detached from the freight cars and put upon another track. The car of stock remained there a short time, until the yardmen finished some other work, when they attached a switch engine to it, for the purpose of taking it to the stock yards. This engine was an ordinary yard engine, with a step on each end for switchmen to ride upon. There were with this engine three switchmen, an engineer and fireman. The head switchman stood at the head of the switch leading from the defendant's tracks to those of the Stock Yard Company, and sent the other two switchmen with the engine to couple on to the stock-car, telling them to "go get the car and the drover." They coupled with the car, at the same time telling the deceased to get on. Some of the witnesses say the direction was to get on the car, but there was evidence that the engineer in charge told him to get upon the engine. The deceased got upon the foot-board of the engine, so that he stood between the engine and the car of stock. The front end of the engine was coupled to the car, and backed up, drawing the car after it. In order to get the engine in a position to push the car over to the stock yards in advance of the engine, those in charge of the train undertook to make what is known as a "running switch," which is done by running the engine at a speed sufficient to give the car impetus, then checking the speed of the engine slightly to loosen the coupling, and, when that is done, to increase the speed of the engine so as to run ahead of the car. After the engine has passed the switch, and before the car reaches it, the switch is thrown, when the car, by its own momentum, is carried upon the other track, and then the engine backs down, passes through the switch, and comes in behind the car on the switch track. In this case, after the deceased got on the foot-board of the engine the train was started, and at the proper time the coupling pin was pulled, and the engineer so increased

the speed of the engine that it started with a sudden jerk, in consequence of which deceased was thrown off the foot-board upon the ground, a short distance ahead of the car of stock following behind, and before he could arise he was run over by such car, and received injuries from which he died. There was some evidence that he was in the act of attempting to get off the foot-board at the time he was thrown therefrom.

Mr. Cyrus D. Roys, and Mr. Pliny B. Smith, for the appellant:

The deceased was not rightfully upon the engine, and the defendant owed him no duty, except to avoid inflicting willful injury. The law made it his duty to know the rules of the company in relation to carrying passengers and freight, and it will be presumed that he knew they prohibited persons from riding on engines. *Railroad Co.* v. *Randolph*, 58 Ill. 515; *Railroad Co.* v. *Climmons*, 55 Texas, 88.

The direction of the engineer to get on the engine, he having no authority, does not relieve the deceased of negligence. *Railway Co.* v. *Langdon*, 52 Pa. St. 28; *Flower* v. *Pennsylvania Co.* 69 id. 210; *Everhardt* v. *Railroad Co.* 78 Ind. 292; *Eaton* v. *Railroad Co.* 57 N. Y. 382.

To justify a recovery, there must have been fault on the part of the defendant, and no want of ordinary care on the part of the deceased. *Railroad Co.* v. *Jacobs*, 20 Ill. 488; *Railroad Co.* v. *Gretzner*, 46 id. 83.

The deceased must have been in the observance of due care for his personal safety. (*Kepperly* v. *Ramsden*, 83 Ill. 357; *Railroad Co.* v. *Johnson*, 103 id. 521.) And this must be alleged in the declaration. *Railroad Co.* v. *Evans*, 88 Ill. 64.

When several courses are open, some safe and others dangerous, a person voluntarily assuming a dangerous one can not recover for an injury received in consequence thereof. *Centralia* v. *Krouse*, 64 Ill. 19; *Lovenguth* v. *Bloomington*, 71 id. 238; *Railroad Co.* v. *Godfrey*, id. 510; *Railway Co.* v. *Hart*,

87 id. 534; *Railroad Co.* v. *Hetherington,* 83 id. 500; *K. P. Co.* v. *Henry,* 50 id. 269; *Railroad Co.* v. *Hall,* 72 id. 222; *Railway Co.* v. *Donahue,* 75 id. 106; *Foster* v. *Railroad Co.* 84 id. 164; *Austin* v. *Railroad Co.* 91 id. 35; *Railroad Co.* v. *Rush,* 84 id. 570.

The court erred in admitting evidence of a custom of permitting persons to ride on the engine and car. There is no allegation of any such custom. The right to be on the engine, as alleged, was the direction of the company's servants. The allegation and proof must correspond. *Gridley* v. *Bloomington,* 68 Ill. 47; *Railway Co.* v. *Beggs,* 85 id. 80.

The court erred in refusing to allow the defendant to prove there was a public line of street cars extending from its tracks to the stock yards, upon which the deceased might have ridden. *Centralia* v. *Krouse,* 64 Ill. 19; *Lovenguth* v. *Bloomington,* 71 id. 238.

The court also erred in excluding testimony that the position in which the deceased stationed himself was dangerous. *Transportation Line* v. *Hope,* 95 U. S. 298; *Railroad Co.* v. *Gregory,* 58 Ill. 272.

The court erred in excluding testimony that the yard master had authority to direct persons to ride upon the engine.

The court gave erroneous instructions for the plaintiff. The second and third were bad, as authorizing a recovery if the deceased was in the exercise of care while on the engine, ignoring the question of his negligence in placing himself there. (*Railroad Co.* v. *Weldon,* 52 Ill. 290; *Railroad Co.* v. *Warner,* 108 id. 538.) They are also bad in assuming that defendant was guilty of "carelessness and negligence in running and handling said engine." *A. I. Co.* v. *Crawford,* 89 Ill. 62; (*Railroad Co.* v. *Shelton,* 64 id. 424; *Small* v. *Brainard,* 44 id. 355.) And they are bad in basing plaintiff's right of recovery on negligence in running and handling the engine, without confining it to the specific negligence charged. *Railroad Co.* v. *Mock,* 72 Ill. 141; *C. P. M. Co.* v. *Ballou,* 71 id. 417.

Mr. George M. Stevens, and Mr. George A. Dupuy, for the appellee:

The deceased, at the time of the accident, was entitled to the rights of a passenger. It was shown that it was customary for shippers of live stock to ride either on the engine or top of the cars to the stock yards. If such was the custom, the servants in charge of the train had the right to invite the deceased to take passage on the engine.

If a person is allowed to ride on a train by the conductor in charge, the question is whether he was lawfully there, and not whether he paid for the privilege. If he is not unlawfully on the train, it matters not whether he is carried gratuitously or not. *Railroad Co.* v. *Muhling,* 30 Ill. 33; *Gillenwater* v. *Railroad Co.* 5 Ind. 339; *Railroad Co.* v. *Derby,* 14 How. 468; *Sherman* v. *Railroad Co.* 72 Mo. 65; *Wilston* v. *M. R. Co.* 107 Mass. 108; *Secord* v. *Railroad Co.* 17 Fed. Rep. 222.

As to who are passengers for hire, see *Railroad Co.* v. *Lockwood,* 17 How. 357; *Railroad Co.* v. *Selby,* 47 Ind. 472.

A party who places another in peril without informing him of his danger, can not complain if he does not exercise the best judgment in extricating himself. *Voak* v. *Railway Co.* 75 N. Y. 322; *Stokes* v. *Saltonstall,* 13 Pet. 190; *Dyer* v. *Railway Co.* 71 N. Y. 236; *Twomley* v. *Railroad Co.* 69 id. 158; *Coulter* v. *Express Co.* 58 id. 585; *Buel* v. *Railroad Co.* 31 id. 314.

Negligence is a question of fact for the jury. (*Railroad Co.* v. *Pennell,* 94 Ill. 455.) And the verdict of the jury must be regarded as settling the controverted facts. *Railway Co.* v. *Klauber,* 9 Br. 613; *Kightlinger* v. *Egan,* 75 Ill. 141; *Railroad Co.* v. *Brookshire,* 3 Br. 225; *De* v. *Clark,* 11 id. 104; *Railroad Co.* v. *Bonfield,* 104 Ill. 223.

The court did not err in the instructions given for appellee. The fact that appellant's servants had control of the engine, that a part of their business was to take stock to the stock yards from the main line, and that they were in the act of so taking Brown's stock, was sufficient to lead him to suppose

they had full authority to act as they did. *Railroad Co.* v. *Dalby,* 19 Ill. 353; *Railroad Co.* v. *Reedy,* 17 id. 582; *Railroad Co.* v. *Parks,* 15 id. 460; *Railroad Co.* v. *Reed,* 37 id. 484; *Railroad Co.* v. *Harmon,* 47 id. 298; 2 Thompson on Negligence, 888, 889.

Mr. Justice Shope delivered the opinion of the Court:

This was an action by appellee, as administratrix of Nelson Brown, deceased, to recover damages for causing the death of said deceased. The trial in the Superior Court of Cook county resulted in a verdict for plaintiff, and judgment thereon. Upon appeal to the Appellate Court for the First District, the judgment of the Superior Court was affirmed, and the case is brought here by the further appeal of the railroad company.

If the case was properly submitted to the jury, they, by the verdict rendered, necessarily found every fact material to a recovery in favor of the plaintiff. We must accept the general judgment of affirmance as settling all questions of fact favorably to the plaintiff below, and that the evidence is sufficient to sustain the finding of the jury, under the issues, as made by the pleadings in the case. We must assume, therefore, that plaintiff's intestate was rightfully a passenger on defendant's train, in charge of his stock, and had a right to be safely carried to the Union Stock Yards, and was, as between himself and defendant, rightfully, and by invitation and direction of defendant, by its servants in charge of his stock and of defendant's engine, on the foot-board of the engine, as alleged in the declaration, and was, at the time of his injury, in the exercise of due and ordinary care for his safety, and that his injury and death were caused by and resulted from the gross negligence of defendant's servants in the running, management and operation of the engine upon which he was so, by invitation, rightfully riding, as charged in the declaration. Our consideration will, therefore, be confined to ques-

tions of law which arise upon the admission and exclusion of evidence, and upon instructions given, refused or modified at the trial.

The principal question, and the one of greatest difficulty, is in reference to the alleged negligence of the deceased in getting upon the foot-board of the switch engine, and attempting, in that position, to ride from Forty-third street to the stock yards. Many of the instructions asked by appellant proceed upon the theory that the deceased was guilty of such negligence, in so being upon the foot-board of the engine, as to prevent a recovery by his personal representative. It can not be said, however, that the deceased, in getting on the footboard of the engine, and remaining there, was in the violation of any duty imposed upon him by law; nor is it conceded that in so doing he acted with less circumspection and care for his personal safety than would have been observed by prudent and ordinarily careful men under like circumstances. Indeed, this is the sharply controverted question in the case, and the question of negligence was therefore a question of fact to be determined by the jury, upon consideration of all the facts and circumstances proved. *Chicago and Eastern Illinois Railroad Co.* v. *O'Connor*, 119 Ill. 586.

The test of plaintiff's right of recovery in this case was the exercise, by the deceased, of ordinary care,—that is, such care as a prudent and ordinarily cautious man would exercise for his personal safety,—and the failure of appellant to exercise such care, and that by reason thereof the injury and death occurred. It can not be said, as a matter of law, that a prudent and ordinarily cautious man would not, under any circumstances, ride a short distance upon an engine. Experience has shown there is some danger in the safest mode of railway travel, and it can not be said that one must not take a particular mode of carriage because it is dangerous. The question can only be determined, as before stated, by a consideration of all the attending circumstances.

In this case it is alleged in the declaration, and the jury have found, that the deceased had the right to be carried over the defendant's road to the stock yards. There is evidence tending to show that when Forty-third street was reached the caboose in which he had been riding was taken away, and his car of stock left standing on appellant's track; that it was the habit or custom of appellant to carry the attendants of stock from that point to the stock yards, three-fourths of a mile, on the stock car or switch engine which picked up the stock cars dropped by appellant's trains at Forty-third street, and took them to the stock yards; that deceased had been engaged in shipping stock over appellant's road for several years; that no other mode of transportation was provided by appellant from Forty-third street to the stock yards; that the yard-master of appellant directed the engineer of the switch engine to go and get the "drover" and his car of stock, which he did, at the same time directing the deceased to get on the engine; that in pursuance of such direction the deceased got on the foot-board of the engine. It appears, also, that after getting under headway, the speed of the engine was checked and the coupling pin pulled, when the engine was thrown or "jerked" forward for the purpose of making a running switch. By the sudden and violent motion thus given to the engine, the deceased was thrown from the foot-board upon the track, and was run over by the car of stock from which the engine had just been detached, and so injured that death ensued.

In determining whether the deceased being upon the foot-board was negligence, it became competent for the jury to consider not only the acts of the deceased, but also the acts of the servants of the company, not alone in respect to their management of the train, but as connected with the acts complained of as negligence on the part of the deceased. There may be fault on the part of the carrier in putting the passenger in a place of unnecessary hazard, or in giving him assurance of safety and the like, which might render the apparent want of

care of a passenger the negligence of the carrier. It is said in Pierce on Railroads, 329, that "the direction, invitation or assurance of safety given by a servant of the company may so qualify a plaintiff's act as to relieve it of the quality of negligence which it would otherwise have. This has been more generally held in the case of passengers who are in charge of the company, and have a right to assume that its servants know what is safe. * * * But notwithstanding such direction, invitation or assurance, the plaintiff will not be excused in following it, if the act involves a reckless exposure of himself, or is one which a man of ordinary prudence would not do." Deering, in his "Law of Negligence," sec. 24, says: "One who obeys the instructions or directions of another upon whose assurance he has a right to rely, can not be charged with contributory negligence at the instance of such other, in an action against him for injuries received in attempting to follow out the instructions,"—citing in support of the text, *Pennsylvania Railroad Co.* v. *McCloskey,* 23 Pa. St. 526; *Pennsylvania Railroad Co.* v. *Henderson,* 51 id. 315; *St. Louis Railroad Co.* v. *Cantrill,* 37 Ark. 519; *Louisville Railroad Co.* v. *Kelly,* 92 Ind. 371; *Poole* v. *Chicago Railway Co.* 53 Wis. 657; *Chance* v. *St. Louis, Iron Mountain, etc., Railway Co.* 10 Mo. App. 357.

In *Wilton* v. *Middlesex Railroad Co.* 107 Mass. 108, the plaintiff, a girl nine years old, was walking with other girls along defendant's track, and one of defendant's cars came slowly along the track, and the driver beckoned to the girls to get on, which they did. By a jerk of the car the plaintiff lost her balance, and fell and was injured. It was admitted in that case that plaintiff was not a passenger for hire. The court says: "In accepting the invitation and getting upon the car, we think she (plaintiff) was not a trespasser, there being no evidence of collusion between her and the driver to defraud the corporation. A master is bound by the acts of his servants in the course of his employment. * * * If, in violation of his instructions, he permits persons to ride with-

out pay, he is guilty of a breach of duty as a servant. Such act is not one outside of his duty, but is an act within the general scope of his agency, for which he is responsible to his master. In the case at bar the invitation to the plaintiff to ride was an act within the general scope of the driver's employment, and if she accepted it innocently, she was not a trespasser. It is immaterial that the driver was acting contrary to his instructions."

If the deceased, at the time of the accident, was in a place of peril, that fact was known to appellant's servants. If he was there by their invitation or direction, the law would require of them the exercise of a degree of care corresponding to the danger to which they had thus exposed him. The care ordinarily required of a carrier of passengers is to be measured by the known peril to the party it undertakes to carry. The proof shows that the making of a running switch is usually attended with danger, and would be especially so to persons standing upon the foot-board of the engine. This was known to appellant's servants, but is not shown to have been known by deceased. Nor is it shown that he knew or was told a running switch was to be made. It became the duty, then, of the servants of appellant to advise deceased of the facts before attempting the running switch, so that he might have taken extra precaution or have gotten off the engine before the switch was attempted. In this connection, the eighth instruction asked by appellant is as follows:

"The jury are instructed, that if they believe, from the evidence, that the said Nelson Brown got upon the car in question for the purpose of riding to the stock yards, and that the engine was drawing a car loaded with stock, and that neither said engine or car was run or operated for the purpose of carrying passengers, then the defendant was not bound to run or operate said engine and car in any other than the usual and ordinary manner for the conveyance of stock, and the said Nelson Brown assumed the ordinary perils attending the oper-

12—123 Ill.

ation of the same in the usual manner; and if the jury believe, from the evidence, that the same was operated in the usual and ordinary manner, and that the injury was the result of the usual and ordinary peril attending such operation,* then the plaintiff can not recover."

—Which instruction the court modified by inserting at the star, the words, "and not through the carelessness and negligence of the servants of the defendant." The modification is claimed to have been error. We do not think it was erroneous. As originally drawn, the instruction left out of consideration the question of defendant's negligence. There was evidence that attendants of stock were carried to the stock yards on such trains, and that the deceased was upon this engine by direction of those in charge of it. The court might very properly, in view of this evidence, have refused this instruction altogether. If the train was not operated for the purpose of carrying passengers, yet if those in charge thereof assumed to carry the deceased thereon, and he was upon the same by their invitation and direction, it can not be said, as a matter of law, they were not bound to operate the same in any other than the "usual and ordinary manner for the conveyance of stock." Under such circumstances, they were bound to operate the train in such manner as due care and caution would suggest for the safety of the passenger. Even if deceased was wrongfully upon the engine, and was permitted to remain there, that would not justify gross negligence in operating the engine and car, or the want of the exercise of ordinary care to prevent injury to him.

It is also urged that the court erred in refusing to admit evidence tending to show that the engineer or yardmaster of appellant had no authority to allow persons, other than employes, to ride on engines or freight cars of which they were in charge; and the second, third, fourth and sixth of appellant's instructions related to this question, and were refused by the court, which is also assigned for error. The rules of

the company were admitted in evidence. The private rules and regulations of a railway company, prescribing the duty and power of its servants and employes, can not affect persons having no notice of them. It is said in Pierce on Railroads, pages 277-8: "The company is liable for the acts of its servants in the course of their employment, both in the rightful use and in the abuse of the powers conferred upon them; and when they keep within the course of their employment, it is responsible for their negligence or wrongful act, although they are acting against its instructions, or even willfully." See, to the same effect, *Wilton* v. *Middlesex Railroad Co. supra; Same* v. *Same,* 125 Mass. 130; *Higgins* v. *Watervleit Turnpike and Railroad Co.* 46 N. Y. 23; *Shea* v. *Sixth Avenue Railroad Co.* 62 id. 185; *Cohen* v. *Dry Dock, B. and B. Railroad Co.* 69 id. 170; *Jefferson Railroad Co.* v. *Rodgers,* 38 Ind. 116.

Those dealing with the company can only judge of the power given to its agents and its servants from appearances and the position and acts of such employes. Under the circumstances in this case, the deceased might well have supposed that those in charge of the switch engine and his car of stock had authority from the company to act for it in the business in which they were engaged. There was evidence tending to show, as found by the jury and Appellate Court, as has been seen, that the deceased had a right to be transported over appellant's road to the stock yards. On arrival at Forty-third street this was but partially performed, and the engineer and switchman were carrying out and completing this contract of carriage, and were apparently in the discharge of that duty. Seeing the caboose car, in which he had reached Forty-third street, detached, and the switch engine attached to his car of hogs, and it being the custom of appellant to take the shippers of stock upon such car or engine, he had the right to suppose, if he knew nothing to the contrary, that those in charge of the engine and of his stock were authorized to act for appellant. He was not bound, as a matter of law, to stop and inquire as

to the extent of their authority to act.    *St. Louis, Alton and Chicago Railroad Co.* v. *Dalby,* 19 Ill. 353.

It is also urged that the trial court erred in admitting evidence of the custom of appellant in allowing shippers of live stock to ride upon its engines and cars containing stock, from Forty-third street to the Union Stock Yards.   It is averred in the declaration that deceased had a right to be carried with his stock over appellant's road to the Union Stock Yards, and that he was rightfully, and by direction of appellant, by its servants, upon the foot-board of the engine, in transit to his destination, at the time of his injury.   It is shown that usually a shipper's pass is given; but if, as part of the contract of shipment of stock, an attendant is to be carried, his right to passage would be as perfect if no pass was given as if that formality had been observed.   The averment of the declaration is broad enough to admit any legitimate proof tending to show the right of the deceased to be upon the engine at the time of the alleged injury.   If it was the usual custom or habit of the carrier to transport the shippers of live stock in this way, and the deceased knew of such custom, we are not prepared to say that evidence tending to show the habit of the company in this regard would not be competent, as tending to show the authority of the servants of appellant in charge to thus carry the deceased, as well as tending to show that the deceased, at the time of the accident, was a passenger for reward.   We think the evidence was competent.

Appellant offered to prove there was a line of public street cars from its tracks at Forty-third street to the Union Stock Yards, which, upon objection, the court refused to allow.   In view of the issue, this evidence was wholly immaterial.   If the deceased had engaged passage on appellant's road to the stock yards, and had a right to be carried there, as alleged, he was under no obligation, at his own expense, to pursue a different route.   If the company furnished a dangerous mode, and if its servants in charge, with apparent authority, directed the

deceased to take passage on its engine, it can not escape liability for an injury to him through the negligence or carelessness of its servants, by showing that he might have procured passage by some other line of travel. It can not be said that a party who engages passage on a freight train, and is injured, while in the exercise of ordinary care, through the negligence of the servants operating the same, is chargeable with such contributory negligence as will defeat his right of recovery, merely because a passenger train or a street car line might have afforded him a safer mode of travel. Assuming the deceased had a right to be safely carried by appellant to the stock yards, he had a right to suppose that he would not be assigned to a place of extra hazard or peril, and that, to whatever place assigned, reasonable care would be exercised to protect him from injury. (*Spooner* v. *Brooklyn City Railroad Co.* 54 N. Y. 230.) It is manifest, when deceased got upon the engine by direction of the servants of appellant, he did not know that a running switch was to be made, and also that the injury occurred in consequence of the attempt to make such switch. As we have seen, if he was in a hazardous position, and the danger to him was increased by the manner of the operation of the engine, he should have been informed in time to have enabled him to seek a place of greater safety, or to have left the engine.

What is here said will dispose of the alleged error in refusing defendant's seventeenth instruction, which was to the effect, that if there was a street car line that deceased might have taken to reach his destination, and he knew of it, and that he attempted to ride on the foot-board of the engine, and was injured, plaintiff could not recover. This instruction is objectionable in ignoring entirely the question of defendant's negligence, and in assuming that the facts therein stated constitute, as a matter of law, such negligence as would preclude a recovery.

It is also urged the court erred in not allowing appellant to prove by Mr. Amsden that the position on the foot-board of the

engine was dangerous. · The witnesses Payne and Smith had both testified to that fact, and it was nowhere controverted in the case. The refusal, therefore, to permit appellant to accumulate evidence upon this point would not be a reversible error.

It is also urged that the court erred in giving the plaintiff's second and third instructions. Three objections are urged to these instructions,—first, that they authorize a recovery if the deceased was in the exercise of ordinary care while on the engine, excluding, it is said, a consideration of his negligence in placing himself in that position; second, that the instructions assume that the defendant's servants were guilty of negligence in the running and handling of the engine; and third, that they base the plaintiff's right to recover upon the negligence of defendant's servants in running and handling the engine, "without confining it to the specific negligence named in the declaration." None of the objections are tenable. The instructions are as follows:

"2.   The court instructs the jury, that if they believe, from the evidence, that Nelson Brown, the deceased, was rightfully on the defendant's engine, as is alleged in the declaration in this cause, and that while he was on said engine he was using ordinary care on his part for his personal safety, and was, by and through the carelessness and negligence of the defendant's servants in running and handling said engine, thrown from said engine and injured, from which said injuries the said Nelson Brown died, then the jury should find for the plaintiff, and give her such damages as they deem a fair and just compensation, with reference to the pecuniary injuries resulting from such death to the wife and next of kin of the said deceased, not exceeding $5000.

"3.   The court instructs the jury, that if they believe, from the evidence, that Nelson Brown, deceased, was the husband of the plaintiff in this suit, and that the said Nelson Brown was rightfully upon the defendant's engine by the invitation and direction of the conductor and manager of the same, and

he was using ordinary care for his safety, and was, by and through the carelessness and negligence of the defendant's servants in running and handling the said engine, thrown from the said engine to the ground, and run over by a car, and injured, from which injuries the said Nelson Brown afterward died, then the jury will find for the plaintiff, and assess her damages at such sum as they believe, from all the evidence, she has sustained, not exceeding $5000."

The jury were required to find that the deceased was rightfully on the defendant's engine, as alleged in the declaration.

In respect to the second objection, the instructions under consideration went to the jury with many for appellant, among which (the sixteenth) was the following:

"The jury are instructed, that if they believe, from the evidence, that a man of ordinary care and prudence would not ride upon a locomotive engine in the position and manner that said Nelson Brown was shown to have been riding at the time of the accident, and you further believe, from the evidence, that his injury was caused by his not exercising ordinary care and prudence, then the plaintiff can not recover."

We do not think the jury could have understood plaintiff's instructions as holding that she might recover although her intestate was guilty of negligence in getting upon the footboard of the engine, or remaining there up to the time of the accident, and especially so when considered in connection with the one above quoted and given for defendant. The question of the negligence of defendant was, by plaintiff's instructions, fairly submitted to the jury as a question of fact, to be determined from the evidence.

There is no force in the third objection. The negligence charged was in respect of the manner of running and operating the engine in making the running switch. The jury could not have understood these instructions, in the light of the evidence, as referring to any other acts of negligence than those charged in the declaration.

. The refusal of the ninth instruction asked by appellant is also assigned for error. It was as follows:

' "The jury are instructed that the defendant was under no obligation to furnish the said Nelson Brown transportation from its track to the stock yards, and in getting upon the engine used for the transportation of the carload of stock, for the purpose of riding to the stock yards, he assumed the ordinary risks and perils of that mode of travel, and if the jury believe, from the evidence, that his injury was the result of the usual and ordinary peril attending such mode of travel, then the plaintiff can not recover."

There was, at least, evidence tending to show that appellant was to carry the deceased to such yards, and the instruction was faulty in assuming the contrary as a matter of law. The instruction was modified by submitting the question of the obligation of appellant to furnish transportation of the deceased to the stock yards, to the jury, to be found by them upon the evidence, and also submitting to the jury the question of the negligence of appellant in causing the injury to the deceased. In this there was no error.

The fifteenth instruction, as asked, was as follows:

"The jury are instructed, that if the said Nelson Brown intended to ride upon the engine or car, common prudence dictated that he should put himself in the safest place possible, and if the jury believe, from the evidence, that it was obvious to a person of ordinary prudence that the place where said Brown stationed himself to ride was much more dangerous than the position on the top of the car, then he was guilty of negligence, and the plaintiff can not recover."

This instruction was modified, and given, and it is not claimed that the modification is erroneous, but it is said that the instruction should have been given as asked, and that its modification was therefore error. What would have been "the safest place possible," is a matter about which men equally prudent might widely differ. Therefore, what common pru-

dence dictates in a particular case is ordinarily a question of fact. In addition to this, the instruction, as asked, wholly ignores the question whether the deceased did not take the position he did by direction of appellant's servants in charge of the train, and of their negligence in operating the same. The modification properly left the question of Brown's negligence, and that of the appellant, to the jury, to be determined by them from the evidence.

What has already been said will dispose of the modification made to appellant's nineteenth and twentieth instructions.

The first, second, third, fifth, sixth, seventh, fourteenth, seventeenth and eighteenth instructions asked by appellant were refused, and the propriety of this ruling is also questioned. As already said, some of them proceed upon the theory that the acts of Brown in being upon the foot-board of the engine, was such contributory negligence as would, as a matter of law, prevent a recovery. What has been said will dispense with the necessity of their separate consideration. The first instruction, however, is as follows:

"The jury are instructed that the evidence in the case will not sustain a verdict for the plaintiff, and their verdict should, therefore, be for the defendant."

Such an instruction will not be given where there is evidence tending to prove the material facts necessary to maintain the issues for plaintiff, from which the jury may find the facts essential to a recovery. There being, as we have seen, evidence in this case tending to prove the issues on the part of the plaintiff, the court properly refused the instruction.

The second refused instruction, which was to the effect that if the jury believed, from the evidence, that the rules of the company forbade the engineer in its service to allow any person not in its employment to ride upon its engine, etc., then the deceased was not rightfully upon the engine, and the plaintiff could not recover; and also the third, fourth and sixth of appellant's series, refused, have been heretofore considered.

Each of these instructions ignored the knowledge of the deceased of the rules of the company, and of the apparent authority of the engineer to act in respect of the matter therein mentioned, and preclude a recovery, although the injury may have been the result of the gross negligence of the company, and the deceased may, under the circumstances shown by the evidence, have been in the exercise of ordinary care.

Appellant's fifth instruction is as follows:

"It is alleged, and proved, that the deceased undertook to ride on defendant's engine from the main line of defendant's road to the Union Stock Yards, the court instructs you, as a matter of law, that in this position he was not a passenger on defendant's train, and could not claim any of the rights of a passenger, and it will make no difference that the engineer's helper invited or permitted him to ride on the engine. If he did permit or invite him to do so, he knew it was not the place furnished by the defendant company for passengers to ride, and in taking that position he assumed all the risks and perils incident to that method of travel."

It can not be said, as a matter of law, that the deceased was not a passenger on the defendant's train. Whether he was a passenger depended upon the facts proved. If the company gave the deceased a pass to the stock yards, or engaged to take him there over its road, and its servants, clothed with apparent authority to act for the company in that regard, directed him to take passage on the engine, and undertook to carry him on the same, these facts were proper to be considered by the jury in determining whether the deceased was a passenger or not. While the company may not, upon their freight trains or locomotives, ordinarily take passengers, or hold them out to the public for that purpose, yet if the company, through its authorized agents, accept a passenger for reward, upon such trains or engines, there is neither reason nor authority for holding that they are not bound to exercise rea-

sonable care and diligence for the safety of such passengers. The instruction was properly refused.

The seventh instruction was properly refused, because it made the plaintiff's right of recovery depend upon the authority of the switchman or engineer to direct the deceased to take passage upon the engine, without reference to his apparent authority, and whether the deceased knew of such want of authority or not.

Appellant's fourteenth instruction is substantially identical with the fifteenth, as asked, which has been heretofore considered, and, for the reason there assigned, was properly refused. Whether the position occupied by him upon the foot-board of the engine was not absolutely the safest place he could occupy upon that train, matters not, if he was not, under the circumstances, shown guilty of negligence in accepting it. It does not necessarily follow that a passenger guilty of some negligence, slight in its character, can not recover for the personal injury resulting from the gross negligence of the carrier. *Chicago and Alton Railroad Co.* v. *Johnson,* 116 Ill. 206 ; *Calumet Iron and Steel Co.* v. *Martin,* 115 id. 358 ; *United States Rolling Stock Co.* v. *Wilder,* 116 id. 100. This instruction, also, entirely ignores the alleged carelessness or negligence of appellant's servants in operating the engine. The same objection obtains to appellant's eighteenth refused instruction.

Taking into consideration the peculiar facts of this case, to which the law has been applied by the trial court with substantial accuracy, we find no such error in the record as will authorize a reversal, and the judgment of the Appellate Court will therefore be affirmed.

*Judgment affirmed.*

Mr. Justice Craig, dissenting.