George W. Keller, Appellee, v. Walter A. Maxwell, Appellant.

Gen. No. 8,359.

20

Opinion filed February 3, 1930.

Whitley & Fitzgerald and Arthur F. Delahunty, for appellant.

Redmon & Redmon, for appellee; Sereno Bodman, of counsel.

Mr. Presiding Justice Eldredge delivered the opinion of the court.

This suit is an action on the case to recover damages for personal injuries sustained by George W. Keller, appellee, by being struck by the automobile owned by Walter A. Maxwell, appellant, at or near the intersection of West Green Street and North Main Street in the City of Decatur. The trial resulted in a verdict and judgment in favor of appellee for the sum of $1,500.

The case went to the jury under an amended declaration consisting of four counts, in each of which, it is alleged in substance that on the 20th day of March, 1928, the defendant owned a certain automobile; that on said date said automobile was being operated by

one Charles Widick in the City of Decatur, at or near the intersection of West Green Street with North Main Street, as the agent of defendant, acting for defendant and operating such car in and about the business and affairs of the defendant, which said agent was employed to transact; the plaintiff was proceeding westward with all due care and caution for his own safety on foot across North Main Street along the extended line of the sidewalk on the north side of West Main Street, and the defendant, by Charles Widick, agent, acting within the scope of his employment so carelessly, negligently and improperly managed, operated and controlled said automobile that plaintiff was struck with great violence and thrown upon the street pavement, by means whereof plaintiff was greatly injured, etc.

To the declaration, there were filed by the defendant the general issue and two special pleas. The first special plea denied that defendant was possessed of said automobile which was then and there driven, operated and managed by said Widick, the agent of the defendant, in and about the business and affairs of the defendant. In the second special plea, it is averred that the defendant did not, by his servant or agent, so carelessly and improperly drive and manage said automobile that by and through his agent or servant, the plaintiff was injured. Both of said special pleas further averred that the driver of the automobile at the time and place mentioned in the declaration was not, then and there, the agent or servant of the defendant and was not transacting any business or affairs for the defendant, or driving the automobile with the permission and consent of the said defendant.

For about a month before the date of the accident, the defendant, who was a chiropractic practitioner, had given said Widick chiropractic treatments for some ailment in his neck. Widick was working at this time

at the Decatur Auto Rental garage and at the M. & C. Dealers in the city and had washed the automobile of the defendant twice. The defendant kept his car at the Schuyler garage and on the occasions when Widick had washed it, the latter went to the Schuyler garage and drove the automobile about three blocks, once to the Auto Rental garage and once to the M. & C. Dealers and had washed it once at each place and had returned it to the Schuyler garage. For this work he was given credit on the treatments the defendant had given him. Before the accident in question, the defendant had had his automobile simonized. On Saturday, March 17, the defendant, Widick and several young ladies drove to Moline in the automobile to attend a church convention and they came back to Decatur Sunday evening. On the way back from Moline, Widick told the defendant that his automobile would be pretty dirty when they got back and that if he had time the next day he would clean it up for him. On direct examination, Widick, testified in substance: "I got the key to the automobile on Tuesday; I had some other work to do on Monday and couldn't get to it; there was nothing much said between us at his office about his automobile; we were talking about the trip; nothing much was said about the keys, he just got done giving me my treatment, and I was dressing in the dressing room when he laid the key down on the little table in the dressing room and said, 'I will see you later,' or something like that; I don't know just what he did say; I dressed and took the key and went to the garage; I got the car out and started to clean it up and took it up to the Auto Rental because there wasn't any rags in the car to clean it with; I then drove it up to the Auto Wrecking Company on Water Street to get some polish; I had it ordered for two weeks and it wasn't in and I didn't get it; when I found that the polish wasn't there I went out on Lobar Street in the

1600 block and picked up a couple boy friends I had been running with a good deal and came back toward town; I went to the Auto Wrecking Company in the Gebhart block on North Water Street to get the polish to use on the car; I then went out to Earl Nelson's and picked him up and came in Condit Street to Water, south on Water to Packard, west on Packard to Main, south on Main to Green, when I saw Mr. Keller start across the street." On cross-examination, he testified in substance: "I went up in the north part of town to get my boy friends; I did not have any conversation with the doctor about going after them; he didn't know I was going after them; I went up in the north part of town to get some polish; it belonged to me; I went to Nelson's just to see him; I hadn't seen him for two or three days; the Gebhart block is about the 1000 block north; Schuyler's Garage, where I got the Maxwell car, is on Jackson street between East Main and East Wood Streets; it is at least 14 or 15 blocks from Schuyler's Garage to the Gebhart block; Nelson lives northeast of the Gebhart block; it is about 11 blocks east; I returned from Nelson's the same way I started from the Gebhart block; at Nelson's house I also got Herman Morrison; he was at the house visiting Nelson; all of us drove in the front seat; I was going right up town; Earl wanted out; it was time to meet his father; I was not taking him anywhere; I was coming back uptown; there was a shorter way to get to Schuyler's Garage; I knew that the doctor's car had been recently simonized or polished; he told me when I went to wipe the car off not to put any polish on the car; on this occasion after the trip to Moline I went to the Schuyler Garage to wipe and dust the car off and clean it up; I did not go to wash it; I did not go to the Gebhart block to get any polish to polish the doctor's car; I did not tell the doctor at the time I took the keys or at any time after I got possession of the car

or at the time the keys were delivered to me that I was going to the Gebhart block and going from there on east to pick up two boys; as far as I knew the doctor didn't know anything about that; I told the Doctor that I would like to clean up his car for the courtesy he had extended to me in taking me to Moline; prior to the time I went to Moline I had washed the car twice; on each occasion I went to the doctor for the keys, and when I washed the car they would collect the price for the car and then pay me for my service; I was working for the Decatur Auto Rental; on each of those occasions I took the car from the Schuyler Garage to the Decatur Auto Rental and brought it back to the garage; it might be three blocks from the garage to the Decatur Auto Rental; I never drove the car about town or anywhere else, and he never told me to drive it anywhere else except over to be washed and back to his garage; the third occasion was the Saturday morning we started to Moline; on a former trial of this case when asked what I was going to do with the polish, I answered that I was going to use it on my car."

Earl Nelson, one of the boys that Widick took riding with him that afternoon, testified in substance as follows: "I am 21 years of age; in March a year ago I lived at 1631 North Lobar Street; it is in the northeast end of Decatur, one block east of Jasper Street; on March 20, 1928, I saw Widick at my house at about 3:30 p. m.; Herman Morrison was also there; Widick came there in a sedan; he asked us to go to town with him; he said he would bring us back home if we would go to town with him; we got in the car and we drove down Lobar Street to Walnut and down Walnut to Jasper, and down Jasper to Hickory, and down Hickory to Clinton, down Clinton to Grand Avenue, and started through Main Street; we were all riding in the front seat; Widick said he had to have the car back at 5 o'clock; that the doctor didn't know he had the car; I

left the car at the corner of Green and Main Streets which is the place of the collision.''

Herman Morrison testified in substance: ''I am 19 years old; I saw Widick on March 20, 1928, at Nelson's home; he came there in a Studebaker and asked Nelson to come and take a ride and Nelson said, 'All right'; he said he would take us down town and bring us back; he said he had to be back to town at 5 o'clock; that the doctor did not know he had the car out and he had to be back at 5; I left the car at the corner of Green and Main and did not ride in it any further after the injury occurred.''

As a result of the collision, a fender on the defendant's automobile was bent and Widick drove the automobile to another garage, called up the defendant on the telephone and told him that he had bent the fender on his automobile. The defendant instructed the garage man to fix the fender. Widick did not tell the defendant at this time that he had struck anybody.

The defendant testified in substance: ''On the return trip from Moline, Widick said he would clean my car for me as a courtesy for my taking him to Moline; on Monday afternoon he told me he could not clean the car that day and that he would be back and clean it tomorrow; he came back the next day and said it was so dark in the garage he couldn't see to clean it and asked for the keys and I gave him the keys and told him to take the car outside the garage and clean it, leave it there and to give the keys to the garage man; I told him to take the dust off the outside of the car and clean out the peanut shells that were on the inside; when I received the car back after the accident it had never been cleaned; it was the same as it was when I put it in the garage; the peanut shells were still in it, and the dust was still on the car; at the time there was a dust puff in the car and I told him to dust the car off and clean the peanut shells out of the inside of it, clean

off the glass and dust it with this dust puff; he said he would get some polish and put that on there, and I told him not to do that; that he didn't have any use for polish; that it had been recently simonized and I didn't want any polish put on it; I next saw the boy about 5 o'clock; before that he called me over the telephone from Merry's garage; he wanted me to o. k. the bill for fixing the fender at Merry's garage; he said he had run into the corner of the garage or something and bent up one of the fenders and wanted to have it fixed, and Mr. Merry wouldn't fix it unless I would o. k. the bill, and I told him I would o. k. the bill and told him to call Mr. Merry to the phone; I also told him as soon as he had the car fixed to get it to my office as I needed it; it was about 6:30 that afternoon that I learned from him that he had struck anybody; I learned about it before that but not from him but from the boy at Merry's garage; I asked him how he came to hit the old man and what business he had with the car in that part of town; I asked him what he was doing with the car up there, and he said he picked up the boys with the car and went joy riding; I asked him if he realized he had taken the car without my knowledge, and he said 'Yes'; I asked him why he didn't tell me about it at 5 o'clock, and he said he thought he could fix it up himself; that the old gentleman was in a pretty good humor and he didn't want me to know anything about it.''

Counsel for appellee seeks to sustain his cause of action on two grounds, first, under the rule of law that if a servant is acting within the scope of his employment and furthering his master's business, the master is liable for the servant's negligence even though he has violated appellee's instructions as to the manner of doing it. *Consolidated Ice Mach. Co. v. Keifer,* 134 Ill. 481; *Lake Shore & M. S. R. Co. v. Brown,* 123 Ill. 162; *Keedy v. Howe,* 72 Ill. 133. Counsel's second

theory of liability is based upon the rule that where a servant has temporarily abandoned his master's employment and gone on an errand of his own, and then returned to the point from which he abandoned his master's business, it is then a question of fact as to whether he has then resumed his master's business and is acting in the course of his employment. *Chicago Consolidated Bottling Co. v. McGinnis,* 86 Ill. App. 38; *Devine v. Ward Baking Co.,* 188 Ill. App. 588.

Neither one of these propositions of law can have any application to the facts in this case. Counsel for appellee insists that there is no distinction between cleaning and polishing an automobile and state in their argument: ''When a man sends his car to be cleaned he expects it to be polished. The indignation of a man whose car was returned to him streaked and dull can be imagined. Polishing is as important an operation as the cleaning of a car.'' To this we cannot agree. Cleaning and polishing a car are as separate and distinct operations as cleaning and painting a car. However that may be, the fact that the defendant may have authorized, which the evidence undisputably shows that he forebade, the polishing of the car, such authorization did not include the privilege of driving the car to distant parts of the city to purchase polish and when that was unsuccessful to proceed on a joy ride with a number of friends. If by any manner of means, the authority to Widick to clean the automobile can be construed to include authority to drive the same to the distant part of the city to purchase polish with which to polish the automobile then that same authority would be limited to the return of the automobile to the place where the polishing was to be done and could not be extended to spending the rest of the afternoon in joy riding around the City of Decatur with his friends. However, the evidence shows unquestionably, both by the testimony of the defendant

and of Widick himself, that the latter had no authority to polish the automobile and consequently had no authority to drive the automobile to the Gebhart block for the purpose of obtaining the polish. Widick testified on cross-examination that he did not intend to get the polish for the purpose of polishing the defendant's automobile and on a former trial of this case testified that he intended to get it to polish his own automobile.

Nor can the cause of action be sustained upon the second theory, that the accident occurred while he was returning or had returned to the point from which he abandoned his master's business and therefore becomes a question of fact as to whether he had resumed his master's business and was acting in the course of his employment at the time of the accident. The evidence conclusively shows that when the accident happened he was still in the act of enjoying the ride with his friends. He had promised to take them back home or to the place where he called for them and there is no evidence tending to show that he was even attempting, at that time, to return them to their homes. The evidence shows beyond dispute that Widick and his friends were still enjoying their unauthorized ride when the accident happened.

The third, fourth and fifth instructions given on behalf of the plaintiff are abstract propositions of law in which no attempt is made to apply them to the facts in the case. The eighth instruction given on behalf of the plaintiff is particularly erroneous. By this instruction, the jury are told that if they believe from the evidence that the defendant authorized Widick to clean the automobile then the latter became the agent of the defendant for the purpose of cleaning the automobile and that if Widick drove said automobile to a distant part of the city, to wit, the Gebhart block, for the purpose of obtaining some polish for cleaning said automobile and that after arriving

at the Gebhart block he drove said automobile on a mission of his own and that after driving said automobile upon such mission he returned to the zone of the Gebhart block and was returning the automobile to the place where he had gotten the same, and that after he had returned to the Gebhart block or the zone thereof and was returning the automobile he struck the plaintiff, and if the jury believe from all the evidence that he was then acting within the course of his employment the defendant cannot avoid liability on account of the fact that Widick had disobeyed the instructions of the defendant in regard to the matter of cleaning the automobile. From what we have said heretofore, it is clear that this instruction is neither based upon the law nor the facts in the case.

For the reasons stated, the judgment of the circuit court is reversed and the cause remanded.

*Reversed and remanded.*