## The Illinois Central Railroad Company
### v.
### Frank E. Jennings.

*Opinion filed October 24, 1905.*

1. RAILROADS—*provision of a contract that stock shipper shall ride in caboose is binding unless waived.* Under a contract providing that a stock shipper shall be entitled to free transportation and shall ride in the caboose when the train is in motion, the shipper is a passenger, but the provision as to riding in the caboose is binding upon the parties unless waived.

2. SAME—*conductor has no implied authority to invite shipper to ride on engine.* A conductor has no implied authority, as a matter of law, irrespective of the particular circumstances, to waive a provision of a stock shipper's contract requiring him to ride in the caboose, by inviting him to ride on the engine. (*L. S. & M. S. Ry. Co. v. Brown*, 123 Ill. 162, distinguished.)

3. SAME—*whether provision of contract requiring a shipper to ride in caboose was waived is a question of fact.* Whether an invitation from the conductor to a stock shipper to ride on the engine was a waiver of a provision in the shipper's contract requiring him to ride in the caboose is a question of fact for the jury, where the evidence shows no express authority on the part of the conductor to waive the provision or to invite persons to ride on the engine.

4. SAME—*what must be shown by a stock shipper to establish waiver of provision of contract.* In an action by a stock shipper who fell from a window of the cab of the engine on which the conductor had invited him to ride, contrary to the provision of the shipper's contract that he should ride in the caboose, if there is no evidence of express authority to waive such provision the plaintiff must show affirmatively that it was within the apparent scope of the authority of the conductor to waive the provision, and that the plaintiff did not know or have reasonable ground to believe the conductor was exceeding his authority.

APPEAL from the Appellate Court for the Fourth District;—heard in that court on appeal from the Circuit Court of Marion county; the Hon. TRUMAN E. AMES, Judge, presiding.

W. W. BARR, and R. J. STEPHENS, (J. M. DICKINSON, of counsel,) for appellant.

W. F. BUNDY, and FRANK F. NOLEMAN, (C. E. JEN-
NINGS, of counsel,) for appellee.

Mr. CHIEF JUSTICE CARTWRIGHT delivered the opinion
of the court:

This suit was brought by appellee in the circuit court of
Marion county, against appellant, to recover damages for
personal injuries suffered in falling from an engine. The
jury returned a verdict of guilty and assessed the appellee's
damages at $5000. Judgment was entered on the verdict,
and on appeal to the Appellate Court for the Fourth District
the judgment was affirmed.

The amended declaration contained three counts, which
averred that plaintiff was engaged in the business of buying,
selling and shipping live stock; that on November 20, 1900,
he shipped a car-load of cattle on defendant's railroad from
Centralia to Assumption, Illinois; that it was necessary for
him to accompany the cattle for the purpose of watching.
over and caring for them; that the defendant, in considera-
tion thereof and the payment of freight, issued to him a
drover's pass, which entitled him to ride on the freight train;
that he was invited and directed by the conductor to ride on
the locomotive engine, and that while so riding on the engine
and exercising due care and caution for his own safety he
lost his balance, was thrown and fell from the engine cab
through an open window and was injured.

The ground for charging defendant with liability, which
was alleged in the first count, was, that while the train was
stopped about two miles south of the station at Pana for the
purpose of supplying the locomotive with water from a tank,
plaintiff was invited by defendant's conductor in charge of
the train to ride to the city of Pana upon the engine; that
it was night time and there were no lights upon the engine
and plaintiff was unfamiliar with the construction of the in-
terior of the cab, and that in endeavoring to secure a safe
place upon the seat at the side of the engine he was thrown

out of the cab window by reason of the window being left open through carelessness and negligence of defendant's servants. In the second count it was charged that the conductor carelessly and negligently invited, ordered and directed the plaintiff to take a place upon the engine; that the place in the engine where he was ordered to ride was extremely hazardous, upon a seat at one side of the cab by an open window; that he was unfamiliar with the position and the cab was not well lighted, and that by reason of the darkness and the motion of the engine and the open window he lost his balance, was thrown and fell out. The third count charged as negligence that the conductor notified and directed plaintiff to ride upon the engine; that relying upon the invitation he left the caboose and mounted the engine, taking a position in the gangway; that while standing in the gangway between the engine and tender, the fireman, willfully and wantonly disregarding his safety, ordered him to a seat on the side of the cab; that the cab was not well lighted, and that in endeavoring to take his seat he fell and was thrown off upon the track.

It was proved at the trial that plaintiff was a stockman and shipped a car of cattle, as alleged in the declaration, in pursuance of a shipping contract signed by him, which provided that the car containing his stock should be in his charge while in transit; that he should feed, water and take care of the stock at regular stopping stations and while the train was not in motion, and that he should be entitled to free transportation, and should, while the train was in motion, ride in the caboose. There were from twenty-six to twenty-nine cars in the train and plaintiff's stock was next the engine. It was dark and stormy, and about twelve o'clock in the night the train stopped about two miles south of Pana, near a water tank. The engine was detached from the train and was run forward to the tank and supplied with water and then returned and attached to the train. Plaintiff had been riding in the caboose, and when the train stopped he got off

and followed the conductor to the front car to look at his cattle. When the train was ready to start the conductor told him to get on the engine and ride to Pana. He did so, and stood on the gangway in front of the door of the fire-box. The fireman could not do his work while the plaintiff was standing there, and when the fireman proceeded to put coal on the fire he told plaintiff to go in and sit on his seat. The fireman's seat ran along the left-hand side of the cab and was about twenty-five inches above the floor. There was an arm-rest running along the window about thirteen or fourteen inches above the seat and three or four inches above the window sill. There was a double window on that side and one part of it was open. The conductor was on the engineer's side of the cab and the train was running very slowly at four to six miles an hour. Plaintiff attempted to take the seat as directed, and in some unexplained manner fell out of the window about one hundred and fifty feet from the tank. According to his testimony he took something to be a step or steps, and there was evidence tending to show that in attempting to get up on the seat he stepped on it and tried to sit on the arm-rest along the window and fell out. There were two small lamps in the cab with painted sides, so as to throw light on the steam gauge and water glass. Too much light in the engine would interfere with the engineer and fireman in looking outside and tend to prevent keeping a proper look-out, so that the cab was necessarily somewhat dark. There was no evidence tending to prove any fault or defect in the engine or the management of it, or in the track, the rate of speed, or otherwise. One side window was usually kept open for ventilation and look-out purposes, and the arm-rest, which was good protection, was thirteen or fourteen inches above the seat, so that there was no negligence in the window being open. When plaintiff was standing on the gangway in front of the fire-box the fireman could not perform his duties, so that it was necessary the plaintiff should take some other position in order that the

train might be kept in motion. The fireman made no pretense of authority over the plaintiff, and directed him to a place which was apparently safer than the one he occupied. About a quarter of a mile from the tank the absence of the plaintiff was noticed, and it was thought that perhaps he had got off for some purpose. When the storm was over the men went back and found him lying by the track with his leg broken.

The only questions in the case were, whether the invitation or direction of the conductor to ride on the locomotive engine was negligent and improper; whether it had the effect of waiving the condition of the contract that plaintiff should ride in the caboose, and whether plaintiff was guilty of negligence by complying with the invitation or order in attempting to ride on the engine.

The contract, which was signed by the defendant's agent and by the plaintiff, provided that he should be entitled to free transportation, and should, while the train was in motion, ride in the caboose of the train conveying his stock. Plaintiff was a passenger, (*Chicago and Alton Railroad Co. v. Winters,* 175 Ill. 293,) but the contract that he should ride in the caboose while the train was in motion was valid and binding upon the parties, (3 Thompson on Negligence, sec. 2911,) and the defendant was entitled to the benefit of it unless the conductor had power to waive the condition and did so. A principal is liable for the acts of his agent within the scope of the agent's authority, either express or implied, but beyond the scope of his authority or duty a conductor or other agent cannot bind his principal. There was no evidence tending to prove that the conductor, as between the defendant and himself, was authorized to waive the benefit of the contract, but if, under all the circumstances, the act of the conductor was within the apparent scope of his authority and plaintiff did not know of any limitation upon such authority, the defendant would be bound. It rested upon the plaintiff to affirmatively show that it was within

the apparent scope of the authority of the conductor to waive the benefit of the contract, and that he did not know or have reasonable grounds to believe that the conductor was exceeding his authority.   If the act was within the apparent scope of the authority of the conductor, plaintiff was not bound, as a matter of law, to stop and inquire as to such authority, but if he knew, or ought to have known, that the conductor was exceeding his authority the invitation or order would not amount to a waiver.   These questions were to be determined from all the facts and circumstances proved on the trial.   The court took the questions from the jury by two instructions, which assumed to state, as a matter of law, that the conductor was authorized to abrogate the contract between the plaintiff and the defendant and waive the condition inserted in it for the benefit of the defendant.   The first instruction given at the request of the plaintiff advised the jury that although the contract contained the provision that plaintiff should, while the train was in motion, ride in the caboose, yet if he was invited by the conductor to leave the caboose in which he was riding and to ride upon the engine for the purpose of looking after his stock, the provision in the contract would not prevent a recovery in the case.   The third instruction given at the instance of plaintiff was as follows:

"If the jury believe, from a preponderance of the evidence, that the conductor in charge of the train in question invited or requested the plaintiff to leave the caboose and go forward and ride on the engine, such action would bind the defendant company and would have the effect of waiving the provision of the contract in evidence in regard to riding on the caboose while the train was in motion."

The question what acts are within the scope of the authority of an agent is ordinarily one of fact.   If the authority is conferred by a writing it may be construed by the court as a matter of law, and perhaps, where the authority is established by usage so common and general as to be known to every one, a court would not err in stating to the jury that

an act was within the scope of such authority. Doubtless as to many acts the authority of a conductor in the management of a train and dealing with the traveling public is so well established that there could be no dispute as to their being within the scope of his authority, but certainly the invitation or order of the conductor in this case was not of that character. No one would say that conductors have a general authority to allow passengers to ride on engines or other parts of trains not designated for the reception or accommodation of passengers, or that under ordinary circumstances it would be supposed that they have such power. It is said in 3 Thompson on Negligence, (sec. 2943,) that the presence of a passenger on an engine will constitute negligence as a matter of law, for the reason that the engine is not designed for carrying passengers, and is so obviously dangerous that his presence there will preclude him from damages either with or without the invitation of the conductor or engineer. In 4 Elliott on Railroads (sec. 1632,) it is said that under ordinary circumstances an employee has no implied authority to receive passengers on an engine, and that such an act as riding on an engine is so obviously dangerous that except in case of an emergency a passenger cannot do so, even with the consent of the conductor, and hold the company liable. There may be exceptional circumstances or an emergency under which, as a matter of fact, a shipper in charge of his stock may suppose that the conductor, or even an engineer or other employee, has authority to permit him to ride upon an engine. The case of *Lake Shore and Michigan Southern Railroad Co.* v. *Brown,* 123 Ill. 162, was of that character. Brown, a stockman, shipped a car-load of hogs to the Union Stock Yards in Chicago and rode in a caboose to the railroad company's yards at that city. There was a custom to pass shippers of live stock from that point to the stock yards without pay, but there was no evidence of any contract as to how Brown was to be carried. The caboose was detached from the train and put on another train and a switch engine was

attached to the car containing Brown's stock to take it to the stock yards. Brown had a right to accompany his stock and to be carried by the railroad company, and was compelled to ride upon the switch engine, as directed by the engineer. Through negligence in making a running switch he was thrown off and received injuries from which he died. The question was left to the jury to say, as a matter of fact, whether, under the instructions, Brown was rightfully on the engine, and it was held, under the circumstances of the case, that he might have supposed that those in charge of the engine and car of stock had authority to direct him to ride upon the engine, and that it would not be proper for the court to instruct the jury, as a matter of law, that he was wrongfully there. In that case there was no contract as to the place where the shipper should ride and no caboose in which he could ride, and the question of authority was treated as one of fact. It was held that if those in charge of the car invited the shipper to ride upon the engine they must operate the train with due regard to his safety and were responsible for their negligence in making a flying switch. This case is entirely unlike that one, for the reasons that there was a caboose in which plaintiff had a right to ride, a contract by which he was to ride in the caboose, and no negligence, either alleged or proved, in the management or operation of the train. It is clear that the law lays down no rule that under the circumstances of this case the conductor had a right to waive the stipulations of the contract, and therefore the court misdirected the jury as to the law.

The second instruction given at the request of the plaintiff recited the ordinary duties of carriers of passengers and was not applicable to the case. It ignored the contract and the entire question of the authority of the conductor to invite or direct the plaintiff to ride on the engine.

The judgments of the Appellate Court and circuit court are reversed and the cause is remanded to the circuit court.

*Reversed and remanded.*