## THE SOUTHERN RAILWAY COMPANY

*v.*

### JOSEPH CULLEN.

*Opinion filed April 17, 1906.*

1. RAILROADS—*a caboose is not essential to constitute a train.* Freight cars and a switch engine coupled together for the purpose of moving from one point to another upon the railroad track under power furnished by the engine constitute a train, even if no caboose car is attached thereto.

2. SAME—*when shipper is rightfully upon the engine.* A stock shipper whose contract requires him to ride upon "the freight train in which such animals are transported" has a right, when the stock is loaded and about to start to the yards, several miles distant, where the caboose is to be attached, to ride to the yards upon the engine as a passenger, whether the servants in charge give him permission to ride or not and whether or not the carrier is engaged generally in the business of carrying passengers to the yards. (*Illinois Central Railroad Co.* v. *Jennings,* 217 Ill. 140, distinguished.)

APPEAL from the Appellate Court for the Fourth District;—heard in that court on appeal from the City Court of East St. Louis; the Hon. W. J. N. MOYERS, Judge, presiding.

This is an appeal from a judgment of the Appellate Court for the Fourth District affirming a judgment of the city court of East St. Louis, in a personal injury suit, for the sum of $1000.   The following statement of the facts is taken in large part from the opinion of the Appellate Court:

On March 7, 1903, appellant was operating a railroad from East St. Louis to and beyond Mt. Carmel, Illinois, and also a belt line extending from the village of Brooklyn,

just north of East St. Louis, to what was known as its "Dyke yards," in the southern portion of the city, on the Mississippi river.   The belt line connected with all the other railroads entering East St. Louis, and along it were located a number of industries having spur tracks connecting with it. One of them was and is the St. Louis National Stock Yards Company, which has stock yards located just north of the city, and owns and operates a railroad on its property which connects with the belt line of appellant about half a mile north of the stock yards.   In delivering stock the stock yards company takes it to the junction with its own engines, where it is received by appellant.

Appellant owns and operates certain railroad yards known as the "Denverside yards," located from two and one-half to three miles distant from the stock yards, in the southern portion of the city of East St. Louis, where all east-bound trains over appellant's road are made up.   Appellant's switching crews receive cars from the stock yards at the junction of the stock yards track and the belt railway, and deliver them over the belt line to the Denverside yards, to be made up into trains going east.

On the day named, appellant entered into a contract with the Morris Beef Company to transport eight car-loads of cattle from said stock yards to Newport News, Virginia, one of the provisions of the contract being, "that in consideration of the premises the railway company will transport for the party of the second part 152 cattle (more or less) from National Stock Yards, Illinois, to Newport News, Virginia, station, at the special rate of thirty cents per hundred pounds, and will afford a free passage to the party of the second part, or his agent, on the train, with the animals, if shipped in car-load quantities."   The contract then prescribed the duties of the shipper in reference to care of the stock while on the road, and states, "and to that end he or his agent in charge of said live stock shall ride upon the freight train in which said animals are transported."

Appellee, who was then in the employ of the Morris Beef Company, engaged in taking charge of export cattle shipped by it to Newport News, Virginia, was instructed by his employer to accompany and care for the cattle named in said contract while in transit. The eight cars of cattle were loaded at the cattle chutes in the stock yards and taken from there by a stock yards engine over its tracks to the junction with the belt line, where they were met by a switching crew of appellant with an engine and tender sent to take them over the belt line to the Denverside yards, to be put into the train then being made up for the east. Appellee, who had come with the cattle from the place where they were loaded, was present when appellant's switching crew took charge of the eight cars. He testified on the trial that he asked the foreman of appellant's engine crew if he could ride on the engine; that the foreman asked him if he had a bill, and he replied that he thought the stock yards foreman had that with other bills for live stock; that the foreman of the engine crew then said he was in a hurry and for appellee to jump on the engine. This statement is denied by the foreman, but however that may be, it is not questioned that appellee did at that time get upon the engine and it started for the Denverside yards with the eight cars. On the way to the yards the engineer discovered a freight car projecting from a spur-track onto the belt line, and finding he was unable to stop in time to avoid a collision, he and his fireman jumped from the engine. They were followed by appellee, who, in his fall, received injuries for which he afterwards brought this suit against appellant.

Appellant contends that the stock contract gave appellee no right to ride on the engine as a passenger from the stock yards to the Denverside yards, and that it did not appear from the evidence either that the engine foreman had express authority to carry him as a passenger, or that it had been the custom for switching crews of appellant to carry passengers between the points named, and that appellee was therefore

riding upon the engine without authority and was not to be considered as a passenger. On the contrary, appellee asserts that the relation of passenger and carrier existed between the parties to the suit, and that this relation was not created by custom nor by invitation from defendant's employees, but by the express contract introduced in evidence by appel- lee and referred to in the declaration. Appellant insists that the kind of train to which the contract refers is a freight train, made up of an engine, freight car or cars and a caboose, and that the contract contemplated only that appellee should ride upon such a train so made up.

The declaration contained two counts, each drawn on the theory that the relation of passenger and carrier existed between appellee and appellant. The negligence, according to the averments of the *narr.* consisted in leaving the car with which the engine collided, too near the belt line, and in running the engine and cars at an unlawful and dangerous rate of speed. The plea interposed was the general issue.

At the close of all the evidence appellant moved the court to direct a verdict in its favor. This motion was denied. Appellant urges that this motion should have been allowed, because it did not appear that appellee was rightfully upon the engine.

KRAMER & KRAMER, (ALEXANDER P. HUMPHREY, of counsel,) for appellant.

FREELS & JOYCE, for appellee.

Mr. JUSTICE SCOTT delivered the opinion of the court:

The eight freight cars and the switch engine, coupled together for the purpose of moving from one point to another upon the railroad track under power furnished by the engine, constituted a train. *Caron* v. *B. & A. R. R. Co.* 164 Mass. 527.

Appellee's contract not only permitted him to ride upon this particular train, but required him to do so, and, accord-

ing to the undisputed evidence in this record, when he went upon the engine to ride he went there rightfully and there became a passenger for hire. The train was just starting upon its long journey to Newport News, Virginia. It was the duty of appellant to furnish at the National Stock Yards a suitable car in which appellee might ride. It failed in that duty, and, by its counsel, says that appellee should have refrained from getting on the train, and by riding on a street car, or by some other method of travel, have overtaken the train at the next station, which would have been the Denverside yards of appellant, where, it is said, a caboose would have been added to the train, in which appellee might have ridden safely. Appellee was under no obligation to do this. When appellant's engine was attached to these cars the train upon which he was entitled to ride was before him. His contract authorized and required him to ride upon that particular train. He needed no permission from those in charge of the train. The written contract made him a passenger for hire, and it is entirely immaterial whether the foreman of the train did or did not consent that he should ride. It is also immaterial whether appellant was engaged generally in the business of carrying passengers from the National Stock Yards to the Denverside yards, or whether the train foreman had the actual or apparent authority to permit or invite appellee to become a passenger upon the engine. Appellee found himself confronted by unusual and exceptional circumstances, under which he might lawfully ride upon the engine. *Lake Shore and Michigan Southern Railroad Co.* v. *Brown,* 123 Ill. 162.

In *Illinois Central Railroad Co.* v. *Jennings,* 217 Ill. 140, to which appellant calls attention, the shipper's contract, unlike that of appellee, expressly provided that he should ride in the caboose, and there was a caboose attached to the train. He left the caboose and at the invitation of the conductor rode upon the engine. The case at bar is entirely dissimilar.

Appellant makes the same objection to the second and seventh instructions given on the part of appellee. The second was in words following:

"If the jury believe, from a preponderance of the evidence, that the defendant is guilty of the negligence charged in the declaration, or either count thereof, and that the injury to plaintiff complained of and alleged in the declaration resulted directly therefrom, and that the plaintiff was in the exercise of ordinary care for his own safety before and at the time of the injury, the defendant is liable and the plaintiff is entitled to a verdict."

In cases of this character, where the declaration states a good cause of action, it would seem to be axiomatic that if the evidence showed the defendant was guilty of the negligence charged in the declaration, that the injury resulted directly therefrom, and that the plaintiff was in the exercise of ordinary care before and at the time of the injury, and had not assumed the risk, there should, as a matter of course, be a verdict against the defendant. Appellant, however, argues that this instruction furnished a test of liability, and that it was erroneous because it did not require the jury to find, from the evidence, before returning a verdict against the appellant, that the appellee was a passenger and rightfully upon the engine while riding there. It appears from the declaration that the relation of passenger and carrier existed between the parties hereto at the time of the accident, and the negligence charged against the appellant is a failure to exercise the care required by the law for the safety of its passenger. Unless the appellee was a passenger and rightfully upon the engine appellant was not guilty of the negligence charged in the declaration.

The two instructions objected to stated the law correctly.

The judgment of the Appellate Court will be affirmed.

*Judgment affirmed.*