## Sarah Mary Wall, Administratrix of the Estate of Edward Wall, Deceased, Appellee, v. Chesapeake & Ohio Railway Company, Appellant.

### Gen. No. 23,755.

1. APPEAL AND ERROR, § 1725*—*when opinion binding upon subsequent review.* The opinion of a court of review becomes the law of the case, binding alike upon the lower court upon a retrial and upon the reviewing court upon a subsequent review.

2. CARRIERS, § 476*—*when ownership of railroad shown.* Evidence *held* sufficient to sustain a finding that defendant owned the railroad at the time plaintiff, a cattle shipper, was injured as the result of being brushed off a cattle car, on which he was riding, by a bridge.

3. EVIDENCE, § 480*—*what is effect of failure of defendant to produce.* The failure of a defendant to produce evidence known to be in his control, and to be material and affecting the defense, may be considered by the jury in determining the rights of the parties.

4. INSTRUCTIONS, § 151*—*when properly refused.* It is not error to refuse an instruction substantially covered in given instructions.

5. CARRIERS, § 482*—*when instruction improper as assuming engine is safe place in which to ride.* In an action to recover for personal injuries sustained by a cattle shipper who had been invited to ride in one of defendant's trains, as the result of being brushed off a cattle car when it passed under a bridge, an instruction assuming that an engine is a safe place in which to ride is improper.

Appeal from the Circuit Court of Cook county; the Hon. RICHARD S. TUTHILL, Judge, presiding. Heard in this court at the October term, 1917. Affirmed. Opinion filed March 25, 1918.

WORTH E. CAYLOR, for appellant.

BULKLEY, MORE & TALLMADGE, for appellee.

MR. PRESIDING JUSTICE HOLDOM delivered the opinion of the court.

Plaintiff's intestate was on May 24, 1896, fatally in-

*See Illinois Notes Digest, Vols. XI to XV, and Cumulative Quarterly, same topic and section number.

jured while he was riding on top of a cattle car in Cincinnati, Ohio, by striking a bridge under which he was passing. From the effects of his injuries he died the next day. March 29, 1898, plaintiff began an action against defendant, similar to the one at bar, in the Superior Court of Cook county, seeking damages for the death of her intestate, which she averred resulted from actionable negligence of defendant. April 22, 1898, she filed her declaration. At the May term, 1898, defendant removed the cause to the United States Circuit Court sitting in Chicago, and in that court moved on special appearance to quash the return of service made by the sheriff of Cook county upon the summons. The motion was allowed, the return quashed, and an appeal perfected to the United States Circuit Court of Appeals, and that court affirmed the order quashing the service. *Wall v. Chesapeake & O. Ry. Co.,* 37 C. C. A. 129. June 8, 1899, the suit in this record was commenced. To the declaration then filed defendant interposed a general demurrer, which was sustained, and plaintiff electing to stand by her declaration appealed to this court, which affirmed the judgment April 4, 1902. Plaintiff then sued out a writ of error from the Supreme Court, which December 16, 1902, reversed the judgment of this court and of the Circuit Court and remanded the cause to the Circuit Court. These last two appeals may be found in 101 Ill. App. 431, and 200 Ill. 66. On such remandment the cause on issues joined was tried before court and jury and a verdict rendered for plaintiff in the sum of $6,000. During the trial the defendant moved for leave to file an additional plea, in which it alleged that it did not own, operate or control any railway in the City of Cincinnati and did not own, operate or control the engine, car or train of cars on which Wall was riding at the time he suffered the fatal injuries complained of, etc. This motion was denied, and on appeal to this court, among

other errors assigned, was the denial of leave to file a plea of nonownership, nonoperation, etc. This court reversed the last judgment for the sole reason that the court erred in not admitting evidence proffered of nonownership and nonoperation under the pleadings as they were, and also because the denial of leave to file the last-mentioned plea was an abuse of judicial authority. The cause again went to trial before court and jury with the added plea of nonownership, nonoperation, etc., and resulted in a verdict and judgment for $10,000, and the parties are again before this court on appeal of defendant.

We rest content with the foregoing chronological recitation and by referring to the case as stated in the former appeal to this court reported in 189 Ill. App. 234, where a full statement of all the essential facts will be found and in which all the law pertaining to the case is cited.

The record before us discloses that the facts involved in this appeal, with the exception of those arising under the additional plea, are the same as on the former appeal in case, *supra*. Notwithstanding this, counsel has argued the case as if it were here for the first time. We shall, however, confine our opinion to the facts and the law projected into the case by the issues joined under the additional plea of nonownership, etc., as these questions are the only ones which are pertinent to be considered at this time.

It has often been decided that the opinion of a court of review becomes the law of the case, binding alike upon the lower court upon a retrial and upon the reviewing court upon a subsequent review. *Linnberg v. City of Rock Island,* 157 Ill. App. 527; *Board of Directors Chicago Theological Seminary v. People,* 189 Ill. 439; *Clayton v. Feig,* 188 Ill. 603.

Questions of contributory negligence, the statute of limitations, the effect of the dismissal of the federal court action, are all settled by the decision of this

court in 189 Ill. App. 234. So far as this court is concerned, these questions are closed incidents.

As to the ownership and operation of the road and its instrumentalities at the time plaintiff's intestate was injured, there is abundant evidence in the record from which, if given credence by the jury, they might reasonably and justly find that the same was owned and operated by defendant. Defendant contended, and endeavored to support such contention by evidence, that the Covington & Cincinnati Elevated Railroad and Transfer and Bridge Company (colloquially referred to as the Bridge Company) and not defendant was the owner and operator. At the time of the accident the train crew of the train on which deceased was riding when injured was in the employ of defendant; they were paid from the pay car of defendant by the paymaster of defendant. The engine that hauled the cars was engine No. 32 of defendant. Defendant owned, as its own witness testified, all of the stock of the Bridge Company. Furthermore, deceased was taken to the hospital after his injuries as a patient of defendant and attended by its surgeon. The coroner's jury by their verdict found that at the time deceased suffered the injuries from which he died he was riding upon a car of defendant. The engineer who had charge of the engine and of the cars, upon one of which deceased was riding when injured, was the engineer of defendant. The fireman was likewise the employee of the defendant. This was strong evidence, unless overcome by countervailing proof, from which the jury might reasonably find that the ownership and operation of the road was in defendant; and furthermore, it likewise appeared from the evidence that defendant had depot privileges in Cincinnati at the time of the accident and ran its trains over the bridge from Covington, Kentucky, into such depot in Cincinnati.

Defendant sought to establish by oral proof that

while admittedly the engine was the engine of defendant and the various persons who operated the engine and the train were its servants, after such equipment crossed the river from Covington it was operated by the Bridge Company and that the persons so operating the trains became employees of the Bridge Company and were paid for their services during the time so engaged as the Bridge Company's servants by defendant's paymaster out of defendant's pay car. It also appeared from the testimony of one of defendant's witnesses that the Bridge Company and defendant had an arrangement between them which was evidenced by a writing. This was not produced by defendant. Certainly such writing would have fixed the relationship between the parties with certainty. In these circumstances defendant must suffer the consequences of its failure to produce such writing, as without it the greater weight of the evidence tended to prove affirmatively that the road was operated and owned by defendant at the time of the accident, and the evidence is ample to sustain the jury's finding in relation thereto. It is true, as contended by defendant and as testified to by its own witness, that the contract was of record, but he did not say nor even intimate where. "Of record" is a very vague and undefined term. It might have meant the public records or the records of defendant. While defendant was not bound to produce this contract as a part of its case, nevertheless, it being the best evidence obtainable, the jury might readily infer from the fact of its nonproduction by defendant, who had it, that there was nothing in it which would strengthen its defense, but on the contrary, that if its contents had been made known it would have affected such defense to defendant's prejudice. On this subject it was said in *East St. Louis Connecting Ry. Co. v. Altgen*, 112 Ill. App. 471:

"Under the circumstances of this case the court

and jury were fully warranted in giving full force to any legitimate inference based upon the evidence regarding the employment of those in charge of defendant's engine, for the reason that the evidence was at hand and peculiarly within the control of the defendant, whereby such inference, if unjust, could be successfully rebutted. The failure to produce evidence known to be within the control of a party to the litigation, and known to be material, or conclusive as in this case, may rightly be considered by the jury in determining the rights of the parties.''

In *Pittsburgh, C. & St. L. Ry. Co. v. Knutson,* 69 Ill. 103, the court say:

''It is first urged that the train which did the injury was not shown by the evidence to have belonged to appellants. On this question several witnesses testify, and their evidence tended strongly to show that appellants owned, or at least were operating this train. It may not prove the fact beyond all doubt, but it certainly raises a strong presumption that they had the control of the train. In reference to such a fact we cannot expect full and undoubted proof. * * *''

In *Harper v. Owen H. Fay Livery Co.,* 264 Ill. 459, in discussing a similar question the court, quoting from 16 Cyc. 937, said:

''Where, for any reason, the evidence to prove a fact is chiefly, if not entirely, within the control of the adverse party, it has been held that the burden of proof—meaning the burden of evidence—is on the party who knows, or has special opportunity for knowing, the fact. * * *''

In *Great Western R. Co. v. Bacon,* 30 Ill. 347, the court said:

''If the railroad company has a contract with the proprietor of this land that she shall fence it, it is no trouble to produce it, and thus exonerate itself from the liability to build the fence. If the defendant does not produce such a contract, the presumption is that none exists.''

In *Chicago Junction Ry. Co. v. McAnrow,* 114 Ill. App. 501, this court, quoting from *Pittsburgh, Ft. W.*

& C. Ry. Co. v. Callaghan, 50 Ill. App. 676, said:

"Weak evidence becomes strong by the neglect of the party against whom it is put in, in not showing by means within the easy control of that party, that the conclusion drawn from such evidence is untrue."

Great Western R. Co. v. Bacon, 30. Ill. 347; Germania Fire Ins. Co. v. Klewer, 129 Ill. 599.

Defendant endeavored to sustain its case of non-ownership, nonoperation, etc., by the testimony of brakemen and firemen and of a yardmaster of the Louisville & Nashville Railroad Company. By this last witness it was attempted to prove the relationship between the Bridge Company and the defendant, but this utterly failed, as this witness had no knowledge upon the subject except from hearsay. Testimony of this character would naturally find but little credence with the jury, to whom it was made known that defendant had available a written contract to prove without any uncertainty the real relationship between the Bridge Company and defendant.

There was no error in the court's refusal to give to the jury the two instructions asked by defendant. The first one was faulty and was moreover substantially covered in instructions given. The instruction was in no wise akin to the one in Cullen v. Higgins, 216 Ill. 78, but was materially variant from it.

The second instruction refused was clearly bad because there was an assumption in it that the engine on which deceased was invited to ride was a proper and safe place. In Southern R. Co. v. Cullen, 221 Ill. 392, in a case where personal injuries were sustained by a cattle shipper riding in an engine, it was held in effect, by sustaining the judgment recovered in the trial court, that an engine was not per se a safe place in which to ride.

We do not think the objection to the instruction regarding the credibility of the witnesses given at the instance of plaintiff is well taken. This instruction

is nearly verbatim the same as an instruction held to be good and without error in *Illinois Cent. R. Co. v. Haskins,* 115 Ill. 300.

There is nothing of merit in the defense interposed and argued before us. The contentions for reversal are wholly technical and have no reference whatever to the merits as established by the proofs.

There should be an end to this litigation, which has now been in the courts 20 years. In each trial upon the merits plaintiff has succeeded. The first verdict was for $6,000 and the one appealed from now is for $10,000. This last verdict is the limit of recovery permitted under our statutes. While there is no complaint that the verdict is excessive, it is significant that after so long a time the jury were moved to award plaintiff the maximum sum which the law permits to be recovered in actions of this nature.

It is time this litigation was finally determined. Its prolongation would be a scandal to the administration of justice.

The trial appealed from was fair; the cause is upon the merits just; correct principles of law have been applied to the facts with sufficient accuracy so that it cannot be said that any right of defendant either of fact or law has been prejudiced by any ruling of the trial court.

The judgment of the Circuit Court ought to be and it therefore is affirmed.

· *Affirmed.*