**Joseph Warput, by Cali Warput, Appellee, v. Reading Coal Company, Appellant.**

**Gen. No. 32,680.**

452

Opinion filed December 19, 1928.

HETH, LISTER & COLLINS, KIRKLAND, FLEMING, GREEN & MARTIN and ROY O. NUTT, for appellant.

DODD, MATHENY & EDMUNDS and EARL J. WALKER, for appellee.

MR. JUSTICE RYNER delivered the opinion of the Court.

Joseph Warput, a minor, by his next friend, brought suit in the superior court of Cook county against the Reading Coal Company, a corporation, and Anton Vichunas, to recover damages for personal injuries sustained by him. There was a verdict and judgment upon the verdict in the sum of $18,000 against both defendants. This appeal was perfected by the defendant Reading Coal Company, the other defendant not appealing.

The accident happened at about nine o'clock in the evening of June 17, 1926, on One Hundred and Third Street, in the city of Chicago. The plaintiff was sitting at the rear end of an automobile truck, owned by the defendant, Reading Coal Company, with his legs hanging down over the tail gate, when his left leg was struck by the automobile of the defendant Anton Vichunas, and severely injured.

The first reason urged for a reversal of the judgment is that the truck owned by the Reading Coal Company, together with the driver, had been loaned to All Saints Church school and for a purpose foreign to the business and objects of business of the company, and that at the time of the accident the truck and its driver were under the control of the sisters of the school. There is little dispute, if any, about the facts pertinent to this issue.

The Reading Coal Company, a corporation, was engaged in the coal business, and in the conduct of its business used automobile trucks. A few days before the accident two sisters from All Saints Church school advised the president of the company that they wished to give a picnic for the children of the school and asked him if he would loan them two trucks with drivers for the occasion. They asked him to send the trucks to the school at One hundred and Eighth Street on the morning of the day of the picnic. Nothing was said by any of the parties as to what the driver should do, or under whose control or direction he should be. The

president complied with the request. The truck on which the plaintiff was riding when he was injured was operated by a driver named Stanley Brzostowski. He was given no instructions by his general employer except to report at the school, which he did. He was paid by the week by the Reading Coal Company whether he worked or not, and it was the understanding that the sisters of the school were to have the use of the trucks and drivers without charge. Shortly after the truck in question arrived at the school some of the school boys placed some temporary seats, consisting of boxes and boards in it, and decorated it with American flags. The driver then took some of the boys of the school to Palos Park, following the direction of the driver of another truck to follow him to that destination. A sister of the school, in the dress of her order, accompanied them. The driver waited at the park until evening, and then brought some of the boys, including the plaintiff, back to the school. The accident happened at about nine o'clock in the evening. The regular working hours of the driver were from seven o'clock a. m. to six o'clock p. m. He had been in the employ of the company about seven years, and his sole duty was the operation of a truck in the transportation of coal.

It is insisted that the trial court, with the foregoing uncontroverted facts before it, should have directed a verdict in favor of the Reading Coal Company. That the plaintiff established a prima facie case of control and operation of the truck by the company at the time of the accident, by proof of its ownership of the truck and its general employment of the driver, is not disputed. But it is urged that the presumption arising from such proof was fully overcome by uncontradicted testimony for the company showing that the president gave no instructions to the driver except to report at the school, and that no charge was made, or to be made,

for the use of the truck or the services of the driver. The further point is made that the company was engaged in the coal business and never acted as a carrier of persons; that the sole duty of the driver was to haul coal, and that, therefore, there could not be any liability upon the part of the company, because the truck was not being used in the conduct of its business and the driver was not engaged in the discharge of any duty within the scope of his regular employment.

Many authorities from this and other jurisdictions are cited and discussed in the briefs. While they present conflicting views as to the law governing the liability of a master for the acts of his servant, most of them are in accord as to the general test to be applied in determining the liability of the master where he has hired or loaned his servant to another. The test is whether the general master in loaning or hiring his servant has for the time being released control of the servant to the person to whom he has been loaned or hired. In the case of *Densby v. Bartlett,* 318 Ill. 616, the court said:

"Where the servant of the general master is temporarily loaned or hired to another for some special service and becomes for the time wholly subject to the control of the person to whom he is loaned or hired and wholly freed from the control and direction of the general master, he becomes the servant, for the time being, of the person to whom he is loaned or hired and during such time becomes the servant of the latter."

The difficulty lies in the application of the test. In this the authorities cannot be reconciled.

The Supreme Court of this State has uniformly held that "the most universal and unfailing test in determining the relation of master and servant is whether the control of the servant includes the power to discharge" and that "the relation of master and servant does not exist unless it includes the right to dis-

charge." *Shannon v. Nightingale,* 321 Ill. 168; *Densby v. Bartlett, supra,* and cases cited. The same authorities also hold that the person to whom a servant and vehicle are loaned does not become the master because he has the power to direct the servant when and where to go and whom to haul. In the instant case, the president of the company gave express instructions to take the truck to the school. It is clear that at this time the general master had complete control over the servant, including the right to discharge him. There was no understanding, express or implied, that the company was turning over complete control of the truck and driver to the sisters of the school. The sisters were given no right to control the driver except to tell him when and where to go and whom to haul. This right was implied and was the only one exercised or attempted to be exercised by them.

It is further argued that the school boys exercised control over the truck upon its arrival at the school. What the placing of temporary seats in the truck and decorating it with American flags had to do with the control of the driver, we are unable to see. Mention is also made of the fact that one of the sisters of the school clothed in the dress of her order, rode in the truck with the boys. It is not claimed that she gave the driver any instructions or attempted, in any way, to control his actions in the driving of the truck. Furthermore, it is not the exercise of power of control, but the right to exercise the power which furnishes the true test in determining who is the master of the servant. *Hamill v. Territilli,* 195 Ill. App. 174. It is hardly conceivable that the president of the company and the sisters of the school, under their verbal arrangement, contemplated that the company was turning over control of the truck and driver to a truckload of school boys of tender age, even though accompanied by a sister of the school, with the power to discharge the driver, operate the truck themselves, or to

direct the driver to take them to some place other than that where the picnic was to be held.

Great stress is laid upon the fact that the company's business was that of a dealer in coal and it had never engaged in the business of carrying persons; that the driver's sole duty was to haul coal, and that no charge was made for the service. So far as the case of the driver is concerned, he was engaged in doing the very thing his general employer had expressly ordered him to do. He was not engaged in a frolic of his own and was not acting outside the scope of his then employment. As to the point that the undertaking was foreign to the business and objects of business of the company, counsel do not claim in their briefs that the doctrine of *ultra vires* is applicable, nor do they say that the president of the company was without authority in the premises. If they considered that the question of his authority was important or controlling, they should have introduced evidence to establish lack of authority in him if that were the fact. By so doing they would have avoided the inference to be drawn from their failure to produce material evidence peculiarly within their control. *Wall v. Chesapeake & O. Ry. Co.*, 210 Ill. App. 136.

There are some general statements in the books to the effect that the master is not liable where the instrumentality causing the accident is not being used at the time in his business. For the most part, these are cases where a servant has wrongfully devoted his master's vehicle to his own use, or where the master has consented to such use. In the few cases where the courts have applied the rule to a state of facts similar to those in the present case the ruling must have been the result of a misconception of the principle of the rule or a misapplication of it to the facts. At the time of the accident, it was part of the company's business to see to it that the children riding in the truck were carried safely home.

The point that the undertaking was for a charitable purpose possesses little force. In the first place, the mere fact that no immediate monetary consideration passed to the company does not necessarily place an indelible stamp of charity upon the act. It is a matter of almost common knowledge that many persons and corporations engaged in business make a practice of donating money and services for so-called charitable purposes. They expect no direct consideration. They do expect to create good will in the community in which they do business, and such good will is a valuable commercial asset. The practice is to be commended, but that does not wholly remove from it the element of purpose to stimulate business. We are not disposed to follow the few authorities from other jurisdictions which seem to hold that the master is exempt from liability where the servant is engaged in an act of a charitable nature. There are no cases in this State in point except by way of analogy. This court has several times held that the owner of an automobile is liable to an invited guest for injuries sustained by the guest, due to the negligence of the driver. *Lasley v. Crawford*, 228 Ill. App. 590, and cases cited. The guest is in a sense in the custody of the owner of the car. *Barnett v. Levy*, 213 Ill. App. 129. In the case of *Jacobs v. Jacobs*, 141 La. 272, cited with approval in *Lasley v. Crawford, supra,* the rule is concisely stated to be as follows:

"One who invites another to ride with him as his guest in an automobile is not absolved from responsibility for negligence or imprudence merely because he is performing a gratuitous service or favor to his guest."

The underlying principle of these rulings seems to be that if a person rightfully entrusts his person to the care of the owner of a vehicle, without any voice as to how the vehicle shall be operated, the owner owes to him the duty of exercising ordinary care for his

safety in the driving of the vehicle. We think the principle is applicable to the facts in this case.

It is finally contended that the court should have directed a verdict in favor of the defendant, Reading Coal Company, because the plaintiff did not show that he was in the exercise of ordinary care for his own safety at the time of the accident. He and three or four other boys were sitting at the rear end of the truck with their legs hanging down over the tailboard. His attention was directed to his passing of a toy to one of the other boys sitting with him. In other words he was acting like a normal boy of his age on such an occasion. The toy is referred to as a "kazook," consisting of a comb with paper wrapped around it. If we may refer, for information, not to judicial knowledge, but to boyhood experiences, it is a crude musical instrument. The boys sitting with the plaintiff escaped injury. One of the boys testified that all of them, except the plaintiff, lifted their legs out of danger. They were fortunate. The plaintiff was 13 years of age at the time of the accident, and whether he was in the exercise of due care for his own safety was an issue properly submitted to the jury.

There was evidence showing, or tending to show, that the company was responsible for the conduct of the driver of the truck, at the time of the accident; that the plaintiff was free from contributory negligence, and that there was negligence in the operation of the truck which alone, or in conjunction with the negligent operation of the car owned by Vichunas, caused the injuries which were sustained by the plaintiff. The court, therefore, did not err in denying the motion of the defendant for a directed verdict. *Shannon v. Nightingale, supra.* In that case the court said:

"Therefore the court may not properly take the case from the jury and direct a finding for the defendant when there is some evidence tending to prove every essential allegation of the plaintiff's declaration,

merely because, in the judgment of the court, the weight of the evidence in support of some material allegation is not sufficient to sustain a verdict for the plaintiff. If the evidence in support of the plaintiff's allegations is sufficient to make a *prima facie* case, the court is not authorized to direct a verdict for the defendant because of evidence of contrary facts tending to an opposite conclusion. On the motion to direct a verdict only that evidence can be considered which is in favor of the party against whom the motion is directed, and that evidence must be considered in the light most favorable to that party, together with all legitimate inferences which may be drawn from it in his favor. In this case there was the single issue presented by the plea of not guilty, and the question whether Pratt was the servant of the plaintiffs in error was vital to that issue. The defendant in error made a *prima facie* case. Contrary evidence was introduced by the plaintiffs in error, but that contrary evidence could not be considered on their motion to direct a verdict in their favor. If the condition of the evidence at the close of the plaintiff's case does not justify an instruction for a verdict in favor of the defendant, no evidence which the defendant may introduce will justify such instruction except uncontradicted evidence of an affirmative defense.''

This is the last pronouncement of the Supreme Court of this State on the subject, and no deviation from it has been called to our attention.

It is finally insisted that the trial court erred in not granting the motion for a new trial for the reasons advanced in support of the motion for a directed verdict, and for the further reason that the manifest weight of the evidence established that the truck was not operated in a negligent manner. There was testimony given to the effect that the truck in which the plaintiff was riding was, while going at a rate of speed

of from 15 to 20 miles per hour, stopped so suddenly that the boys were violently thrown forward and back. Some of the witnesses for the plaintiff testified that the truck owned by Vichunas had been following them a few feet behind for some time and that the driver was given no warning by the driver of the truck in which they were riding of his intention to stop or slow up. The verdict of the jury was not against the manifest weight of the evidence on this issue or on any of the other issues of fact which the plaintiff was required to prove to enable him to recover.

Complaint is made of the ruling of the court in sustaining objections to the cross-examination of Brzoslowski, the driver of the truck in question, as to what instructions he received on the day of the accident. He was put on the stand by counsel for the plaintiff and asked by whom he was employed, to whom the truck belonged, and was asked to describe it. He was not asked about instructions or conversations with anyone. In this respect we think the court did not err. Even if the ruling was erroneous it constituted harmless error because the defendant in putting in its defense interrogated the driver about his instructions.

Complaint is also made because the court modified two instructions tendered by the defendant and gave them to the jury as modified. Both instructions were general in character. They were of the stock variety and applicable to any personal injury action. They gave no information to the jury about the law relating to master and servant. Each ended with a direction that if the jury found certain things to be true they should "find the defendant, Reading Coal Company, not guilty." The court modified them so that they applied to both defendants. It is said that this was reversible error because the instructions, as modified, "tended decidedly to confuse the jury respecting the real situation that existed in this case as to certain material differences on the question of legal liability

involving the two defendants.'' We think not. The instructions told the jury the law relating to the amount of evidence required to maintain the plaintiff's case and that, in determining whether the defendant was liable, they were not to take into consideration the fact that the plaintiff was injured and sustained damages. If counsel desired the jury to be told the law peculiarly applicable to the case of a general master hiring or loaning his servant to another, they should have tendered instructions stating the law and asked that they be given. This they did not do. The court did not err in modifying the instructions and giving them to the jury, as modified.

In view of the character and extent of the injuries sustained by the plaintiff, we are not inclined to hold that the damages assessed by the jury were excessive.

Finding no error in the rulings and actions of the trial court, the judgment of the superior court of Cook county is affirmed.

*Affirmed.*

HOLDOM, P. J., and WILSON, J., concur.